## SAGERS et al. v. INTERNATIONAL SMELTING CO. et al.

No. 3002.   Decided September 29, 1917.   (168 Pac. 105.)

1. WITNESSES—REFRESHING RECOLLECTION—DISCRETION. Whether a written memorandum may be referred to by a witness, for the purpose of reviving a present recollection, or as a record of a past recollection, is a matter largely within the discretion of the trial court. (Page 427.)

2. WITNESSES—REFRESHING RECOLLECTION. An instrument in writing becomes a record of a past recollection merely, when it fails to revive a present recollection of the facts to which it relates, and in such case the witness must be able to state positively that he knows it was made at a certain time, and that when made it was true. (Page 427.)

3. WITNESSES—REFRESHING RECOLLECTION—DISCRETION. The court did not abuse its discretion in permitting plaintiff, a farmer, while testifying as to the acreage and various kinds of crops grown on certain land for certain years, to refresh his present recollection by reference to a memorandum made by him, three years after the crop was grown, in part from his recollection and in part from accounts kept in a diary during the years the crops were grown, where the witness testified to a large majority of the items without referring to the instrument and stated that he believed he could testify to all, if given sufficient time, making it apparent that the instrument was of the kind used for reviving a present recollection rather than a record of a past recollection which must have been made at or about the time of the event to which it relates. (Page 431.)

4. NUISANCE—POISONOUS GAS—INJURY TO ANIMALS—EVIDENCE—SUFFICIENCY. In an action for damages to live stock and crops

alleged to have been caused by the operation by defendant of a smelter emitting poisonous gases, evidence *held* insufficient to show that the death or sickness of the animals was caused by the alleged operation.[1]   (Page 433.)

5.  TRIAL—INSTRUCTIONS—APPLICABILITY TO EVIDENCE—DAMAGES. The court erred in refusing to withdraw from the jury consideration of damages on account of squash and truck garden damaged or destroyed, where there was no evidence of the cost of harvesting the same.   (Page 434.)

6.  TRIAL—INSTRUCTIONS—APPLICABILITY TO EVIDENCE—D A M A G E S. Where the net damage to the grapevines for the years alleged in plaintiff's complaint could not be ascertained from the evidence, the court erred in not withdrawing from the jury consideration of damages to the same.   (Page 435.)

Appeal from District Court, Third District; *Hon. F. C. Loofbourow,* Judge.

Action by W. W. Sagers and another against the International Smelting Company and others.

Judgment for plaintiffs.   Defendant named appeals.

MODIFIED and AFFIRMED CONDITIONALLY, without costs.

*Van Cott, Allison & Riter* for appellant.

*E. A. Walton* and *Hancock & Barnes* for respondents.

THURMAN, J.

This is an action to recover damages for injury to certain crops, live stock, and wire fences in Tooele County, during the years 1911 to 1915 inclusive.   The injury is alleged to have been caused by the operation of defendant's smelter in the vicinity of plaintiffs' land, whereby smoke, fumes, and poisonous gases arising from the smelting of copper, iron, zinc, silver, arsenic, antimony, and other mineral ores were discharged into the air and carried out over and upon the plaintiffs' land, causing the injury complained of.

---

[1] *Edd* v. *Union Pac. Coal Co.,* 25 Utah, 293, 71 Pac. 215; *Edgar* v. *Rio Grande Western Ry. Co.,* 32 Utah, 330, 90 Pac. 745, 11 L. R. A. (NS) 738, 125 Am. St. Rep. 867.

The case was tried to a jury. Verdict was rendered for plaintiffs and judgment entered. The defendant Smelting Company appeals and assigns as error that certain evidence was inadmissible, and that the evidence in other respects was insufficient to justify the verdict.

Plaintiff's crops were distributed over several parcels of land in township 3 south, of range 4 west of the Salt Lake Meridian. In presenting their evidence, plaintiffs sought to have their witnesses describe the acreage and kind of crops grown on each parcel of land, during each of the years in question consecutively, commencing with section 11, for the year 1911. During the examination of W. W. Sagers, one of the plaintiffs, as a witness, he testified from recollection to the various kinds of crops grown on section 11 for the year 1911 and the acreage of each crop. Before fully concluding his testimony on that point, however, he was asked by his counsel if he had kept a memorandum of the crops planted during that year. Replying in the affirmative, he was requested to refer to it and give the acreage. He stated that he had made the memorandum himself and knew it was correct. In cross-examination as to its competency to refresh his recollection, it developed that it was made within a year and a half next preceding the date of the trial and about three years after the crops were grown. Defendant objected to the witness referring to the instrument on the grounds that it was incompetent, irrelevant, and immaterial, and not proper to be used by the witness to refresh his recollection. On further examination of the witness as to the competency of the instrument the fact was elicited that the data for the memorandum were taken in part from the recollection of the witness and in part from accounts he had kept in a diary during the year the crops were grown. Defendant at this point interposed the further objection that the memorandum sought to be used was only a copy of accounts contained in another book. All of the objections were overruled. The witness, referring to the instrument, proceeded to detail the acreage and kind of crops grown on the parcel of land in question for the year 1911. His evidence was substantially the same as that given by him before refer-

ring to the memorandum. Just why the memorandum was called for and injected into the case by plaintiffs' counsel at that stage of the proceeding is not disclosed by the record. During the cross-examination of the witness as to the competency of the memorandum, he several times stated that he could give the items without referring to it if he was given time. The witness was permitted, over objections by defendant, to refer to the writing while testifying as to the acreage and crops on the same parcel of land during 1912; and while the record is not clear, it is fair to presume he used it also in connection with his testimony concerning crops on the same parcel of land in 1913 and 1914. As to crops in 1915, the record affirmatively shows the witness testified entirely from recollection. The same is also true of the years mentioned as to crops raised on section 14, the crops and acreage being about the same every year. As to the crops raised on section 13, witness was asked to state them without using the memorandum, and did consecutively for every year during the whole period of time. He did the same as to the remaining parcels of land upon which crops were grown. As to the wire fences alleged to have been injured and the horses and cattle that had died, the witness testified from recollection both as to numbers and value. At a later stage of the trial the same witness was asked in detail as to the acreage, kind, and quantity of crops raised on all the several parcels of land during each and every year from 1911 to 1915 inclusive. He answered the questions from memory and from memoranda made at the time the crops were harvested without objection, except as to the quantity of corn raised, in which case he was permitted to refer to the memorandum which had been objected to theretofore. It is proper to state once for all that this memorandum was seasonably objected to by defendant whenever it was referred to during the trial. The witness also testified from recollection as to the values of the various crops and the difference in quantities raised before and after the smelter went into operation. Later in the trial he testified fully from recollection as to the quantity of corn raised in each and every year. The crops to which the testimony related

were wheat, oats, lucerne, corn, potatoes, squash, garden truck, and fruit. The witness had been one of the owners of these lands for a great many years, during which time he had annually raised the same kinds of crops as those concerning which he testified at the trial.

We have endeavored, without undue prolixity, to give sufficient of the details connected with the use of the memorandum in question to show the circumstances and conditions under which the witness was permitted to refer to it while giving his testimony.

Whether or not written memoranda may be referred to by a witness for the purpose of reviving a present recollection or as a record of a past recollection is a matter largely in the discretion of the trial court; and that discretion will of necessity be governed and controlled by the nature and circumstances of each particular case in a large degree, rather than by attempting to apply a fixed and definite rule to all cases that may arise. In the present case respondents and appellant radically differ as to which class the memorandum in question belongs—whether it is to be treated as a record of a past recollection or an instrument that may be referred to to revive a present recollection. There is a marked line of distinction between the two, well defined and recognized, especially by modern authorities. Appellant contends that the memorandum in this case is a record of a past recollection merely, while respondents contend it belongs to the other class. The distinction given by the authorities and the difference of opinion between the opposing parties become of vital importance in determining the issues raised by this assignment of error.

The rules applicable to the two classes of memoranda will determine the class to which the one in this case belongs. As we understand the authorities an instrument in writing becomes a record of a past recollection merely, when it fails to revive a present recollection of the facts to which it relates; but in such a case the witness must be able to state positively that he knows it was made at a certain time and also knows that when made it was true. It must also

appear that the memorandum was made at or about the time of the event to which it relates. If satisfactory proof is made of these essential conditions, the instrument itself is admissible as evidence of the facts to which it relates.

The development of the law relating to this class of memoranda and the conditions under which it may be used as evidence is given by Professor Wigmore, in his work on Evidence, vol. 1, pp. 826 to 848, inclusive. The same author at pages 849 to 859, inclusive, states his view of the law relating to the other class of memoranda, namely, written instruments to revive present recollection. If the instrument in fact revives the present recollection of the witness so that he remembers the facts or transactions to which it relates, he is permitted to use it for that purpose only. He then testifies from his recollection thus stimulated and revived, the instrument itself not being admissible in evidence. The same author, referring to this class of memoranda, at page 852, says:

"That the paper is a copy, not an original, is also no essential fault. The only question is whether in fact, it is genuinely calculated to revive the witness' recollection and for this purpose a copy may conceivably be entirely satisfactory. The radical difference of principle between this use and that of a copied record of past recollection is plain; there is here no necessity of accounting for the original in any way."

At this point the author quotes excerpts from three decisions which we consider of sufficient importance, as illustrating his view, to incorporate into this opinion:

"1843, Shields, J., in *Dunlop* v. *Berry*, 5 Ill. (4 Scam.) 327, 39 Am. Dec. 413 (the witness refreshed his memory as to the contents of a return by looking at the copy of it in the declaration): 'It was competent for him to use the declaration or any other paper for the purpose of refreshing his memory on the subject.' "

"1852, Jewett, J., in *Huff* v. *Bennett*, 6 N. Y. 337 (the witness used a newspaper report): 'It is well settled that he is permitted to assist his memory by the use of any written instrument; and it is not necessary that such writing should have been made by himself, or that it should be an original writing, providing after inspecting it he can speak to the facts from his own recollection.' "

"1877, Cole, J., in *Folsom* v. *Log-Driving Co.*, 41 Wis. 602 (the witness, testifying to the amount of damage, used a copy made

recently by K. from a copy of original contemporary memoranda, the other papers having become defaced): 'This kind of evidence is open to more or less suspicion, because * * * it may lead him to suppose he recalls facts when he really does not. But this affects the credibility rather than the competency of the testimony.' ''

After quoting the foregoing excerpts the author says:

''That the paper was not drawn up about the time of the events is not an essential fault. The recollection may be equally refreshed by a recent note, as by some contemporaneous record. It might, in fact, be argued that there was less danger of reliance upon the record itself and more probability of actual refreshment, where the paper was one confessedly having no value as a contemporaneous record of past recollection.''

In Elliott on Evidence, vol. 2, at sections 854-872, inclusive, this question is quite thoroughly considered. At section 859, the author classifies the different kinds of memoranda generally about the same as does Wigmore, except that he adds a third class which he admits is questionable, and which, in any event, we consider immaterial in the present case. At section 861 he discusses the question as to the time when the memorandum should be made and arrives at the conclusion that no definite rule can be laid down. That section and the next following read as follows:

''No definite rule can be laid down as to when the memorandum should be written or as to how nearly contemporaneous with the fact or facts recorded the memorandum must be, for a memorandum written at one time might aid the memory of one but be no aid to another. In other words, a memorandum made long after the fact may be to some witnesses of much greater use than even a contemporaneous memorandum will be to others. It follows that very much must depend upon the circumstances of each case, the character of the witness, and the court's discretion, and consequently it should not be stated as a general rule that a memorandum should not be used for refreshing the present recollection unless made contemporaneously with the fact which it records, although as to past recollection it should ordinarily appear that the memorandum was made at or about that time.

''The rule, as found in the decided cases, is that the memorandum may and should have been prepared at the time of the fact therein recorded, or soon thereafter, while the facts are still fresh in the memory of the witness. This rule, however, while often stated, and sometimes applied indiscriminately, should, it is submitted, be strictly applied only in reference to past recollection, and not where the witness has an independent present recollection after his memory is refreshed.''

In section 863 the author states what he calls the better rule that the document need not be contemporaneous with the event or fact referred to, and that it may be of almost any character. This refers to memoranda used to stimulate the memory and not as the record of a past recollection. At section 870, he states that by the great weight of authority it is no objection that a copy of an original memorandum is used for the purpose of refreshing the memory, if it does, in fact, serve to revive the recollection so that the witness has a perfect memory of the facts. At section 872, he confirms the rule already stated that where the memorandum refreshes the recollection so that the witness can testify to the facts the document itself is not admissible as independent evidence, but where it does not refresh the memory but the witness can say he knows the memorandum was true when made, although he has no present recollection of the facts to which it relates, the document itself is admissible.

Greenleaf on Evidence, vol. 1 (16th Ed.) sections 439a to 439b, briefly and intelligently discusses the question of a memorandum as the record of a past recollection, while, at section 439c, he explains and elucidates his view of the law as to memoranda used for the purpose of reviving a present recollection. Without quoting the language of the author it will be found upon examination of the sections referred to that he practically is in accord with the authors to whom we have referred at greater length.

Jones, in his Commentaries on Evidence, vol. 5, at sections 874 to 880, inclusive, treats of memoranda to refresh or revive present recollection, and, at sections 881 and 882, states the law as he understands it relating to memoranda as a record of a past recollection. He also is in harmony with the other text-writers to whom we have referred. These authorities generally agree upon the conditions and circumstances which differentiate one class of memoranda from another, and the conditions and circumstances under which each class or kind may be used. See, also, Cyc., vol. 40, at pages 2452-2467, inclusive. See especially the last page referred to, paragraph X, which reads as follows:

''A memorandum or other writing is not made evidence by being used to refresh the memory of a witness, or by the fact that it would be permissible to use it for such purpose and if the witness, after examining the writing, testifies from his own independent recollection of the facts, the writing cannot be introduced in evidence or read to the jury. Where, however, a witness has no independent recollection, but testified merely from his knowledge or belief in the accuracy of the paper, it is proper that such paper should be put in evidence or read to the jury as auxiliary to the witness' testimony or as a statement adopted by him.''

As far as we have been able to inform ourselves, all of the modern authorities on evidence are substantially to the same effect. They agree upon the classes of memoranda that may be used by a witness and the circumstances and conditions under which they may be used. Most of the cases cited by the authors referred to generally support the text. We have not cited them specially and in detail as it would serve no useful purpose, after having made the references we have in the preceding pages. By reference to Phillips on Evidence, an English work, vol. 1, at page 289, and Taylor on Evidence, a still later English work, vol. 2, at sections 1406 to 1413, inclusive, it will be observed that considerable progress has been made in the development of this class of evidence since the works of those authors were published. Phillips makes no division of memoranda into classes whatever while Taylor, a later authority, makes the distinction from which the classes are more clearly defined by the American authorities. This distinction is very concisely stated in section 1412, above referred to.

From these authorities, and others that might be cited, we have no difficulty in this case in arriving at the conclusion that the document here in question is one referred to for the purpose of reviving a present recollection rather than as a record of a past recollection. We are led to this conclusion mainly because, as already shown, the witness was able to testify and did testify to a large majority of the items required by the questions propounded to him without referring to the instrument, and also because he stated several times during his examination, in relation to the instrument, that he believed he could testify to all of the items from recollection if given time. He was not given time, and there-

fore whether he could have so testified without the memorandum was not actually demonstrated at the trial. He testified to enough, however, without referring to the document to justify the belief that with some assistance from the memorandum he could testify to the facts from present recollection. It should be remembered in this connection that the witness was not a merchant, or a shopkeeper, or other person with an infinite variety of daily transactions impossible for any one not a prodigy to remember except just long enough to make a record. But he was a farmer living on and cultivating the farm he had cultivated for years before; raising the same kinds of crops, varying as to acreage a little from one year to another, but with his land always in view, and perhaps little or nothing to engross his attention except the production and harvesting of the crops thus produced. It does not seem marvelous, when we view it in the light of these circumstances, that such a person should remember to a practical degree of accuracy how many acres of each kind of crops he raised the last year, and the year before, and the year before that, and the quantity and value of the crops raised thereon. No doubt such a farmer is frequently making mental comparisons as time goes on as to whether he is cultivating more or less in any particular year than he did the year before, or in years previous, or whether it amounts to more or less in quantity or value. If we are right in these deductions, how can we say, as matter of law, that a record made by a farmer two or three years after a crop was raised by him is so unworthy of credence as to be insufficient to revive a present recollection? The greatest mistake made by respondents, in our opinion, in respect to this matter, was in practically forcing the memorandum upon the witness at a time when he did not appear to seriously need it to refresh his recollection. But this, even if relied on, would not be reversible error. Cyc., vol. 40, p. 2449.

We have seen, from the authorities cited, that the fact that this instrument was a copy and made long after the event did not render it objectionable if it, in fact, revived the recollection of the witness. As to whether it did or not, or whether

it was calculated to do it, under all the circumstances, was a matter to be determined, and was determined, by the trial court.   That the trial court in such cases is clothed with discretionary power is determined by nearly all the authorities to which we have referred in this opinion, and others as well. Cyc., vol. 40, p. 2449; *Lawson* v. *Glass,* 6 Colo. 134; *Chamberlain* v. *Ossipee,* 60 N. H. 212; *Brown* v. *Smith,* 24 S. D. 231, 123 N. W. 689; *Madigan* v. *Degraff,* 17 Minn. 52 (Gil. 34); *Johnson* v. *Coles,* 21 Minn. 108; Greenleaf, Ev., vol. 1, section 439b; Elliott, Ev., vol. 2, section 876; Jones, Comm. Ev., vol. 5, section 879.

Under the circumstances of this case, as disclosed by the record, we are unable to say the trial court abused its discretion in permitting the witness to refer to the memorandum in question for the purpose of refreshing his recollection. This assignment must, therefore, be denied.

Appellant also assigns as error the court's refusal to strike from the record all the evidence relating to the sickness and death of the animals mentioned in the complaint, on the grounds that there was no evidence tending to show that such sickness or death was caused by the defendant.

The testimony of the plaintiff W. W. Sagers tended to show that, after the smelter went into operation, he lost by death the following animals: In 1912, one cow, valued at $60; in 1913, one cow, $60; one calf, $20; and one horse, $100; in 1914, one cow, $60; and in 1915, one horse, $50, making a total of $350.   The witness testified to the various symptoms during the progress of the sickness or disease which finally resulted in the death of the animals.   He proved the same symptoms and external appearance by other witnesses for the plaintiff, but none of them knew or could do more than conjecture that the sickness or death of the animals was caused by the operation of the smelter.   Besides this there was testimony in the case that during the same period of time there was prevalent in the vicinity a disease among animals, especially among horses, designated by one of the experts as an infectious pneumonia not due to mineral poisoning.   This

disease had many symptoms similar to those testified to by plaintiff's witnesses. Again, it appears from the evidence of the expert introduced by the plaintiff that there is an infallible test which can be applied to determine whether or not an animal has died from mineral poisoning, and that is a chemical analysis of certain organs of the animal. It also appears that such test was made; that the organs were chemically analyzed in the manner suggested by plaintiffs' expert on at least two of the animals that had died, and no mineral poison was discovered.

Without entering into detail as to the symptoms of the disease and the theories and conjectures of the witnesses, both expert and laymen, it is sufficient to say we have arrived at the conclusion that the evidence upon the point in question is insufficient upon which to base a judgment, and especially in view of the fact, as we view the evidence, that it is just as probable that the animals died from the other disease referred to as it is that they died from poison resulting from the operation of the smelter. On this point many of the authorities cited by appellant are pertinent and in accord with doctrine almost universal. *Ewing* v. *Goode* (C. C.) 78 Fed. 442; *United States* v. *American Surety Co.* (C. C.) 161 Fed. 149; *Edd* v. *Union Pacific Coal Co.*, 25 Utah, 293, 71 Pac. 215; *O'Connor* v. *Chicago, R. I. & P. Ry. Co.*, 129 Iowa, 636, 106 N. W. 161; *Fuller* v. *Ann Arbor R. Co.*, 141 Mich. 66, 104 N. W. 414; *Searles* v. *Manhattan Ry. Co.*, 101 N. Y. 661, 5 N. E. 66; *Edgar* v. *Rio Grande Western Ry. Co.*, 32 Utah, 330, 90 Pac. 745, 11 L. R. A. (N. S.) 738, 125 Am. St. Rep. 867. In fact, the evidence would seem to preponderate against the probability of death by mineral poisoning, when we add to this circumstance the fact that no mineral poison was discovered in the chemical analysis above referred to. In view of this conclusion this assignment of error must be sustained, and the amount of the damages, $350, be eliminated from the judgment before it can be permitted to stand.

In its fifth and sixth assignments of error appellant contends the court erred in refusing to withdraw from the jury, as requested by defendant, consideration of dam-

ages on account of squash and truck garden damaged or destroyed, as there was no evidence of the cost of harvesting the same.

The court specifically instructed the jury that it must make deduction for the expense plaintiff would necessarily incur in placing the crop in condition to realize its market value. The court having so instructed the jury, which was proper, whether or not it should have given the request presented by appellant depends entirely on the question as to whether or not there was any evidence of the cost of harvesting. We have been unable to find any such evidence and, therefore, this assignment must also be sustained, and the value of the squash and truck garden eliminated in order to sustain a judgment for the plaintiffs. The damages for squash are claimed only for the years 1911 and 1912; for 1911, $144; for 1912, $48; total, $192. The evidence shows there was an entire failure of the crop, and the crop, but for such failure, would have been worth the sum above mentioned. The evidence shows the truck garden was grown during the years 1911 to 1914, inclusive; that but for the failure it would have been worth $100 a year, but as conditions were plaintiff only received one-fourth of a crop. The damage, therefore, was $75 a year, or a total of $300. This amount together with the total damages to squash, $192, or a total of $492, is the total credit that should be allowed on the judgment on account of damage to truck garden and squash.

Finally, appellant contends under its seventh assignment of error that the court erred in not instructing the jury as requested by it, withdrawing from the jury consideration of damages to plaintiffs' grapevines during the years 1912, 1913, and 1914, because the only allegations in the complaint relative to grapevines in those years allege destruction, and appellant alleges there is no evidence to support the allegation.

The evidence tends to show considerable injury to the grapevines during the years mentioned. Some were destroyed entirely, and some were still living at the time of the trial, but, like the net damage to the squash and garden truck,

already considered, the actual damage is unascertainable from the evidence. It is impossible to segregate it, so that the entire damage claimed for the three years must be eliminated in order to sustain a judgment for the plaintiffs. The damages on this account amount to $100 a year, or a total of $300.

Appellant's seventh assignment of error is, therefore, sustained. The evidence clearly shows that these crops—squash, garden truck, and grapevines—were greatly damaged, and if it was done by the wrongful acts or omissions of the defendant, as found by the jury, it is an apparent hardship on the plaintiffs to impose upon them a condition that these credits be allowed before the judgment can be affirmed. The plaintiffs are only entitled to the amount of damage they have actually sustained, and the burden was upon them to establish that amount. This damage cannot be determined by merely showing what the value of a full crop would have been when placed upon the market without going farther and showing what the cost of harvesting would have been. This the plaintiffs did not show, and by their failure to do so the entire judgment is jeopardized, unless it can be modified by making the deductions above suggested. These amounts are clearly ascertainable from the uncontradicted evidence in the case.

Appellant contends that in the case of the live stock the damages are not severable from the damage to the hay and pasture, but, as there is no assignment of error as to these items, this contention cannot prevail. Besides this, it is not at all clear to the court that great damage might not be done to hay and pasture, rendering it unpalatable and unfit for feed, and at the same time not destructive of life by mineral poisoning. As to this, however, it is not necessary to express an opinion. This disposes of all the assignments relied on in the argument.

It is therefore ordered that respondents have thirty days from the date of receiving notice of this opinion within which to elect whether or not they will allow a credit upon the judgment of the aggregate amount of the sums herein named, to wit, the sum of $1,142. If plaintiffs consent that the credits be allowed, the judgment will be modified accordingly and

affirmed, without costs; otherwise it will be reversed, with costs taxed against respondents.

FRICK, C. J., and McCARTY, CORFMAN, and GIDEON, JJ., concur.