# MATSON v. MATSON.

No. 3460.   Decided June 25, 1920.   (190 Pac. 943.)

1.  EVIDENCE—TRUSTS—EVIDENCE HELD TO SHOW LAND WAS HELD
    IN TRUST.   In an action by plaintiff, as surviviing partner of
    defendant's husband to recover land standing in the name of
    defendant alleged to be partnership property, *held* shown by
    sufficiently clear, cogent, and convincing evidence that the
    land was held in trust for the partnership.

2.  EVIDENCE—WITNESSES—PARTNERSHIP BOOK ENTRIES AUTHENTI-
    CATED BY PARTY ADMISSIBLE AND MAY BE USED TO REFRESH
    RECOLLECTION.   In an action by a surviving partner against
    the wife of deceased partner, entries in the partnership books
    made by plaintiff were not admissible per se, but the plain-
    tiff could use them to refresh his recollection, and if they
    did refresh he could then testify from memory; but if they
    did not refresh it, but he was able to state he knew the en-
    tries were correct when made, then they were admissible.[1]

3.  APPEAL AND ERROR—COURT PRESUMED TO HAVE BASED FINDING
    ON EVIDENCE FREE FROM OBJECTION.   Case having been tried
    to the court without a jury, it must be presented on appeal
    that the court based its findings on evidence free from ob-
    jection as to competency.

Appeal from Second District Court, Weber County; *A. E.
Pratt*, Judge.

Action by E. W. Matson against M. A. Matson.   Judgment
for plaintiff, and defendant appeals.

AFFIRMED.

*J. G. Willis*, of Ogden, for appellant.

*C. R. Hollingsworth*, of Ogden, for respondent.

---

[1] *Sagers* v. *International Smelting Co.*, 50 Utah, 423, 168 Pac.
105.

THURMAN, J.

The plaintiff, E. W. Matson, is the surviving partner of
George H. Matson, deceased, and brought this action to re-
cover title to certain real property in Weber county alleged
in the complaint to be partnership property. The defendant
is the surviving widow of said deceased partner and claims
the property in her own right.

It is alleged in the complaint that the partnership was
formed January 1, 1899, under the firm name of Matson
Bros., for the purpose of buying and selling real estate,
stocks, bonds, and other kinds of personal property, and as
insurance, real estate and rental agents and brokers, and that
the said partners thereafter entered upon and continued to
transact such partnership business under said firm name
until the death of said George H. Matson, April 17, 1911.
The complaint also, in substance, alleges: That it was agreed
between said partners that they should share equally in the
profits and losses of said partnership; that prior to the form-
ation of said partnership, to wit, on or about December 16,
1895, the said George H. Matson bought certain tracts of
land in Weber county at tax sale, among which are the par-
cels of land in controversy in this action; that all the money
expended in the purchase of said land, together with the
money paid for subsequent taxes thereon down to and in-
cluding the taxes for the fiscal year 1898, was paid by said
George H. Matson from his own money; that defendant did
not pay any of said money, either for the purchase of said
property or for the subsequent taxes thereon, and had no in-
terest whatever in said property except as trustee thereof;
that the tax sale certificates issued for said tax sales were
taken, at the request of said George H. Matson, in the name
of defendant, his wife, as trustee for said George H. Matson,
she holding the legal title thereof merely for his convenience;
that said George H. Matson was at all times prior to the
formation of said partnership the sole owner of the beneficial
interest in said property; that thereafter many of said tracts
of land were redeemed from said tax sale and the money paid

therefor was taken and retained by said George H. Matson as his property; that on February 4, 1898, the time having expired within which said property might be redeemed, the said George H. Matson surrendered all of said tax sale certificates to the county auditor of Weber county, who thereupon issued a tax deed for all of said tracts of land which had not theretofore been redeemed; that said deed, at the request of said George H. Matson, was issued in the name of said defendant, as grantee, but nevertheless as trustee for the said George H. Matson; that said defendant had no other interest in the property represented by said deed; that after the issuance of said deed, and prior to December 31, 1898, the owners of some of the tracts of land conveyed by said tax deed paid to said George H. Matson certain sums of money, whereupon, at his request, the defendant herein executed quitclaim deeds to the owners so paying said money, and the said money so received by said George H. Matson was retained by him as his own property; that on said January 1, 1899, at the time of the formation of said partnership, said George H. Matson sold, delivered, and contributed to said partnership all his interest in thirty-six tracts of said land, including the land in controversy in this action; that thereafter said land continued to be the property of said partnership, notwithstanding the legal title remained in defendant, as trustee for said partnership; that defendant was cognizant of the formation of said partnership and the contribution thereto of said tax sale certificates and consented thereto; that subsequent to December 31, 1898, and down to the 17th day of April, 1911, the date of the death of said George H. Matson, the owners of some of the said tracts of land conveyed by said tax deed paid to said partnership certain sums of money for said lands, whereupon, at the request of said partnership, defendant executed and acknowledged quitclaim deeds to such owners as paid said money, and the money so paid was retained by said partnership and was equally divided between said partners; that the last of said quitclaim deeds prior to the death of said George H. Matson was executed by defendant at the request of said partner-

ship December 11, 1906; that on July 5, 1911, after the death of said George H. Matson, defendant, at the request of plaintiff, as the surviving partner of said partnership, executed another quitclaim deed to the Merchants' Light & Power Company of Ogden, the consideration thereof being the sum of $510; that for the fiscal year 1899, to and including the fiscal year 1915, said partnership paid all the general taxes levied and assessed on the tracts of land included in said tax deed for which defendant had not executed quitclaim deeds as before stated. (At this point the complaint specifically describes ten tracts of land for which quitclaim deeds had not been given, and which is the land in controversy between the parties hereto.)

It is further alleged in the complaint that defendant at all times heretofore mentioned, and during the entire period from the day of the purchase of said tax sale certificates, acknowledged that she held the same as trustee, as aforesaid, and did not repudiate said trust until January 13, 1915, at which time she asserted to plaintiff, as surviving partner of said partnership, that she was the owner in fee simple of the ten tracts of land heretofore mentioned; that ever since said last-named date defendant has continued to assert her ownership of said property and claims an interest therein adverse to said partnership, which claim is without any right whatever. Plaintiffs prays that defendant be adjudged to hold said property in trust for said partnership and be forever restrained from asserting any claim adverse to said partnership, and for general relief.

The answer of defendant admits the partnership and admits there have been no conveyances of the ten tracts of land in controversy. It also admits that defendant claims to be the owner of the property, and denies all the remaining allegations of the complaint. The trial court found the facts in favor of the plaintiff substantially as alleged in the complaint. Conclusions of law and decree were entered accordingly. Other findings and conclusions were made touching matters admitted in evidence, but such findings are not

material to a determination of the issues presented on this appeal.

The evidence is included in two large volumes, covering more than 800 pages of typewritten matter. It is, in the main, documentary, accompanied with such oral explanations as were deemed necessary to render the same intelligible.

A careful review of the evidence, as the same appears in the appellant's abstract, with an occasional reference to the transcript, has convinced the writer that the findings and conclusions of the court below are amply sustained. We deem it impracticable in this opinion to review any considerable portion of the evidence, nor is it necessary in our view of the case. The nature of the case is such that the issues can be determined without considering the evidence in detail. The books and accounts of George H. Matson, prior to the formation of the partnership between him and the plaintiff, appear to have been carefully and systematically kept. The same is true of the partnership books and accounts after the partnership was formed January 1, 1899. The documentary evidence, together with the oral explanations made in connection therewith, show quite conclusively that George H. Matson, in December, 1895, purchased at tax sale with his own money the several tracts of land in controversy, together with other tracts of land, and received certificates of sale therefor in the name of his wife, defendant in this action. After that, and prior to the partnership between him and plaintiff, which commenced January 1, 1899, George H. Matson paid all the subsequent taxes assessed upon said property out of his own money. During said period several of these tracts of land were redeemed by the owners and the money paid therefor was paid to George H. Matson and retained by him as his own property. In all cases where said property was redeemed, the defendant, in whose name the certificates of sale were issued, upon request of George H. Matson, immediately executed quitclaim deeds therefor to the owners of the property. When the time had fully expired within which the remaining tracts of land might be redeemed, George H. Matson surrendered said cer-

tificates of sale to the county auditor of Weber county and received a tax sale deed therefor in the name of the defendant. The certificates of sale and deed referred to were at all times retained in the possession and under the control of George H. Matson until the formation of the partnership between him and the plaintiff. Upon the formation of the partnership, as stated in the complaint, the tracts of land which had not been redeemed were contributed to the partnership by George H. Matson and were thereafter considered and treated as partnership property. Partnership books were opened and accounts were kept concerning these lands. George H. Matson was credited therewith and the partnership debited. Subsequent taxes thereon were paid. by the partnership, and whenever any of said lands were thereafter sold the purchase price was paid to the partnership and was either divided equally between the partners or became a part of the partnership funds and was used in the business. None of it was ever paid to defendant. All she did or was requested to do was to execute quitclaim deeds to the persons to whom the property was sold. This was the uniform method of transacting the business down to as late as 1915, four years after the death of her husband. One deed was executed by.her at the request of plaintiff, as surviving partner, after the death of her husband. The consideration therefor, $510, was received by plaintiff and used by him as partnership funds. No part of it was paid to defendant.

In addition to these facts, concerning which there is little or no dispute, there is one fact which to my mind is of deep signficance in determining the question of ownership, which is the ultimate issue between the parties litigant. In 1913 defendant, for some reason, in the first instance, paid the taxes on the land still remaining. The partnership afterward assumed this obligation and issued to her its check by way of reimbursement. The same occurred as to the taxes of 1914. All the facts and conditions heretofore summarized, it seems to me, are utterly inconsistent with the theory of individual ownership on the part of defendant. Another thing is worthy, at least, of passing notice: These same

books and accounts show a debit and credit account with the defendant, from which it is quite clear that at some time defendant placed in the hands of her husband for investment a small sum of money aggregating a few hundred dollars. The partnership ledger, in March, 1899, shows a credit to begin with of $620 brought from the old ledger. Then there appears credits by sugar stock dividends, canning company dividends, various items of interest and sale of sugar stock, the whole aggregating $2,567.05. The debits balance the credits and show receipts by defendant of shares of sugar stock, dividend on canning company stock, and various checks. It nowhere appears in the books or accounts of the partnership that defendant is credited with anything on account of the lands in controversy or debited with the payment to her of any portion of the proceeds. It does not appear that any accounting was ever demanded by her or had in any manner or form between her and the partnership concerning these lands.

In addition to these circumstances, which are almost conclusive in and of themselves, two witnesses testified for plaintiff as to conversations had with defendant after the death of her husband and prior to 1915. One of these, a Mr. Rasmussen, testified that in 1912 or 1913 he had a conversation with defendant respecting the price of these lands. He informed her that Mr. Matson (meaning the plaintiff) would take $800 for his half interest. Defendant said, ''Well, I have an idea I will buy his interest myself.'' In a later conversation she told the same witness she had settled with Mr. Matson and that the lands then belonged to her. A Mr. Farr testified for plaintiff. He also had a conversation with defendant about 1914. He was trying to negotiate a purchase of the land. He testified defendant told him she could not give him a definite answer as to the price; that her brother-in-law, Mr. Matson, was interested in the property and she would have to consult him.

These apparent admissions on the part of defendant are entirely consistent with the claim of plaintiff that the land was partnership property and that defendant was cognizant

of the fact. The defendant herself testified that before she married George H. Matson, as early as 1892, she was earning money in some clerical employment, and that she placed in his hands for investment sums aggregating about $600, besides accumulations of profit and interest thereon; that she understood he had invested some money for her in these lands, but did not know how much. In fact, she seemed to know very little about it. We have already shown that she had an account appearing on the books of the company, the first item of which, $620, was transferred from the books in use prior to the partnership. Other entries were made in the partnership books, both debits and credits, but nothing pertaining to the lands in question. The books show transactions with and on account of defendant relating to other classes of property, showing immense profits to her, aggregating many thousands of dollars, but nothing pertaining to the property in question. When we consider the fact that the books and accounts were kept in a systematic manner, and transactions with and for the defendant were entered apparently in the most formal manner, it is certainly strange that nothing relating to these lands should occur in her account, if she was, as she claims, the individual owner of the property. It is even more strange that she would permit the business to run for a period of twenty years without some kind of an accounting which would demonstrate the exact condition of her affairs in respect to the property. Furthermore, there is nothing in the entire history of the case to justify the assumption that her husband, George H. Matson, would take from her property to which she was exclusively entitled and give it to his brother.

When we consider, from every point of view, the apparent generosity of George H. Matson towards the defendant in matters of business, as disclosed by the record, it is unbelievable that he would have conducted the business as it was conducted, or permit it to be so conducted, if the property in question was the property of defendant. Defendant denied the alleged conversations with Rasmussen and Farr, but her testimony from beginning to end was vague, uncer-

tain, and far from satisfactory. It utterly failed to meet the case made by plaintiff. Even admitting that where an attempt is made to establish a trust under circumstances such as exist in the present case the evidence should be clear, cogent, and convincing, we are of the opinion that the evidence on behalf of plaintiff in the case at bar responds to the measure of proof required.

Appellant assigns as error the admission of incompetent evidence. There are some forty-eight assignments. Most of them belong to one class—the admission of various exhibits, most of them entries in the books of account.

The trial court, early in the trial, ruled that entries in the books made by plaintiff were not admissible per se, but that plaintiff could use the entries made by himself to refresh his recollection. If they did refresh it he could then testify from memory; if they did not refresh it, but he was able to state he knew the entries were correct when made, then the entries themselves were admissible in evidence. This undoubtedly, is the correct rule. *Sagers et al* v. *International Smelting Co. et al.*, 50 Utah, 423, 168 Pac. 105, and cases cited. Some of the entries in the books were made by George H. Matson, some by plaintiff, and some by other bookkeepers. A large proportion of the entries were made by the plaintiff himself and were admissible under the rule above referred to. Defendant objected to practically everything that was offered as an exhibit. In appellant's brief there is no attempt at segregation, no specific reference to objectionable evidence, little or no explanation, and no authorities cited. It is extremely difficult for the court to understand just what appellant's contention is with respect to the matter alleged as error. In view of these facts, unless the circumstances were such as to demand a specific definite determination of the question mooted, it would not be prudent to attempt an adjudication.

We are of the opinion that there is sufficient competent evidence in the record to sustain the findings of the court below, and, the case having been tried to the court without a jury, it must be presumed the court

based its finding upon evidence free from objections as to its competency. *Seaverns* v. *Costello,* 8 Ariz. 308, 71 Pac. 930.

The judgment is affirmed, at appellant's costs.

CORFMAN, C. J., and FRICK, WEBER, and GIDEON, JJ., concur.