DOROTHY DALTON, Respondent, *v.* HAMILTON HOTEL OPERATING
Co., INC., Appellant.

First Department, October 31, 1924.

Bailments — action by tenant of apartment in hotel to recover value of
    goods stored by defendant hotel — oral conversation prior to lease
    stipulated that defendant would store trunks and packing case until
    apartment was ready for occupancy, if lease was signed — written lease
    contained agreement that defendant acted as gratuitous bailee only,
    without liability for loss of goods stored — receipt given for goods con-
    tained same stipulation — oral agreement was merged in written lease
    — defendant was gratuitous bailee liable for gross negligence only —
    gross negligence not shown.

An oral agreement between a prospective tenant of an apartment in a hotel and
    the owner of the hotel, to the effect that if a lease was signed for the apartment
    the hotel would store several trunks and a packing case belonging to the daughter
    of the tenant until such time as the particular apartment was ready for occu-
    pancy, is merged in the written lease subsequently signed by the parties, and
    where the lease expressly stipulates that the hotel will be responsible as gratuitous
    bailee of any trunks or packing cases stored in its storeroom and the receipts
    given for the trunks and packing case contain the same stipulation, the hotel
    owner becomes liable merely as a gratuitous bailee and is responsible for the
    loss of a trunk and packing case so stored only in case of gross negligence on the
    part of the hotel.

There being no evidence in this case that the defendant was guilty of gross negli-
    gence in caring for the trunks and packing case which were lost, it is not liable
    to the plaintiff for the value of the contents thereof.

APPEAL by the defendant, Hamilton Hotel Operating Co., Inc.,
from a judgment of the Supreme Court in favor of the plaintiff,
entered in the office of the clerk of the county of New York on the
22d day of October, 1922, upon the verdict of a jury.

*Fluegelman & Trosk* [*Ralph O. L. Fay* of counsel; *Henry Fluegelman*
with him on the brief], for the appellant.

*Allan Deutsch* [*Edwin J. Lukas* with him on the brief], for the
respondent.

MERRELL, J.:

The plaintiff, a motion picture actress, has recovered judgment
against the defendant, Hamilton Hotel Operating Co., Inc  for
the sum of $5,127.50, based upon the verdict of a jury in plaintiff's
favor for $5,000.   The recovery was for the alleged value of certain
wearing apparel, articles of personal adornment, and other personal
property of the plaintiff, alleged to have been contained in a trunk
and a packing case left by the plaintiff with the defendant for storage.
The defendant owns and operates an apartment hotel known as
the Hamilton Hotel at 143 West Seventy-third street in the borough

First Department, October, 1924.           [Vol. 210

of Manhattan, New York city. The plaintiff claims a right of recovery for the goods and property left by her with the defendant as bailee, and which the plaintiff alleges the defendant neglected and refused to return to her upon demand.

The claimed facts upon which the plaintiff seeks to recover are as follows: On or about August 23, 1920, according to the testimony of the plaintiff's father, he visited the Hamilton Hotel and there had a conversation with a Mr. Fluegelman, the president of the hotel company, and tentatively selected an apartment which he sought to rent for his daughter, the plaintiff. Plaintiff's father testified that a day or two later he returned to the hotel with his wife and daughter, and conducted negotiations with Fluegelman with reference to leasing the desired apartment. The testimony of plaintiff's father in this respect was as follows: " Well, Mr. Fishel took me and introduced me to Mr. Fluegelman, after I had told him that it was necessary to take care of some articles that I had, in the event that I took the apartment. If I couldn't select that apartment, I would have to take one that I could get sooner. He told me that I couldn't have this one until the 1st of October. Then Mr. Fluegelman — I met Mr. Fluegelman. Mr. Fishel took me down to Mr. Fluegelman's office and introduced me at that time, and I wanted to have a conversation with him in regard to what he was willing to do providing we took the apartment. * * * I told Mr. Fluegelman that in the event that we took the lease, that I had several trunks and other articles which we must dispose of somewhere to someone that would take care of them, providing that we took the apartment, or I would have to take an earlier apartment somewhere else if that could not be done. * * * Mr. Fluegelman said that he would take good care of anything that I might bring over; bring over anything that I wanted to leave, and he would take care of it until such time that we took the apartment, and that he would put a special lock on one of the closets there and move everything into the apartment, so that my daughter would have everything there when the other — as soon as the other parties vacated. It was occupied at that time."

The plaintiff testified concerning this conversation with Fluegelman as follows: " My father mentioned to Mr. Fluegelman — rather, Mr. Fluegelman mentioned to my father that we could not have the apartment that we had chosen until October 1st, and as I was going out of the city and my mother and father were going to Chicago, all my belongings, my trunks and household things had to be taken care of, and Mr. Fluegelman told my father that if we brought the things over there, that he would be glad to take care of them until such a time as he could put them in the particular apartment, which was October 1st."

Plaintiff testified that this conversation occurred the latter part of August. Plaintiff's father further testified that after Fluegelman had told him that he would take care of the trunks in case he leased the apartment, and under those conditions, on the seventh of September he signed a lease of the apartment for his daughter; and that after the execution of the lease and about the fourteenth or fifteenth of September he went to the Hotel Hamilton and there delivered to those in charge of the hotel five trunks and a packing case containing the wearing apparel and effects of his daughter, the plaintiff, and received for each of the said trunks and packing case a check. Plaintiff's father testified that thereafter he did not visit the apartment. The lease which plaintiff's father testified was actually executed on the 7th of September, 1920, bore date August 24, 1920, and thereby the defendant leased to plaintiff's father a furnished apartment in the Hamilton Hotel on the eleventh floor, numbered 1107 and 1108, for the term of one year commencing October 1, 1920, and ending October 1, 1921, " to be occupied only as a private dwelling apartment by the said tenant and his immediate family." The said lease contained, in its 13th and 15th clauses, the following provisions:

" 13th. Store-rooms are provided by the Landlord to accommodate the Tenant in the storage of trunks, with the express understanding that the said storage space is furnished gratuitously by the Landlord, and that Tenants using the same for any purpose do so at their own risk, and upon the express stipulation and agreement that the Landlord shall not be liable for any loss, damage or injury to or theft of property left therein."

" 15th. The Landlord is and shall be under no obligation whatsoever to accept or receive for safe keeping any property of the Tenant, any provision of law to the contrary notwithstanding, but in case any property of the Tenant shall be accepted or received, it shall be accepted, received and held entirely at the risk and hazard of the Tenant and the Landlord shall not be liable or responsible for any damage thereto or loss or theft thereof whether arising from negligence, or otherwise."

The plaintiff testified that she took possession of the apartment leased for her by her father about the 15th or 16th of October, 1920, and that soon after taking possession of her apartment she requested the hotel company to deliver to her her five trunks and the packing case which had been left at the hotel by her father. Four of the trunks in question were delivered to the plaintiff, but one of the trunks and the packing case were missing, and the hotel company was unable to produce the same and did not deliver said trunk and packing case to the plaintiff. As before stated, at the time the

five trunks and packing case were left with the defendant by plaintiff's father, the defendant delivered to the father six checks. Upon each of the checks there was plainly printed the following:

" HOTEL HAMILTON
" West 73rd Street
" New York
" *Read the following agreement:*

" The property hereby receipted for being received and stored gratuitously, it is expressly agreed by the holder hereof in accepting this receipt that said receipt and storage shall be entirely at the risk of said holder and the owner thereof and that the Hotel shall not be liable for loss or injury thereto whether caused by negligence, fire, theft or any other cause whatsoever.

" Said Hotel shall have the authority to sell said property at its option at public or private sale without notice at any time after six months from the issuance of this receipt.

" Said Hotel is further authorized to deliver said property to any person presenting this receipt without identification."

The checks covering the missing trunk and packing case were numbered, respectively, B 1015 and B 1021, and these two checks were produced and introduced in evidence by the plaintiff. Upon the trial, largely by a process of elimination, the plaintiff testified as to the contents of the missing trunk and packing case. In her complaint the plaintiff alleged the contents of said trunk and case to be of the value of $6,245. Upon the trial the plaintiff testified as to the purchase price of the articles contained in the missing packages, and also gave some testimony as to how much wear the various articles of wearing apparel lost had had. No other evidence was given by or in behalf of plaintiff as to the value of the property lost. Undoubtedly the evidence of the cost of the various articles lost furnished some proof of their value.

Plaintiff's complaint attempts to allege a cause of action against the defendant as an innkeeper, but upon the trial the plaintiff apparently sought to hold the defendant merely as a bailee of the property lost. The plaintiff, to establish her cause of action, relied upon the alleged contract of bailment testified to by her father and herself whereby it is claimed the defendant agreed to store the plaintiff's property.

It seems to me upon the evidence the plaintiff was not entitled to recover as against the defendant. The only possible consideration for the agreement of the defendant to store and care for the plaintiff's property was the contemplated lease of the apartment in defendant's hotel, and such agreement, if made, was upon the con-

dition of the leasing of the apartment by the plaintiff's father. The suggestion on the part of Fluegelman, as testified to by the plaintiff and her father, was that in the event of a lease of the apartment being taken by the plaintiff, or her father in her behalf, plaintiff's trunks and property would be cared for by the defendant at its hotel until possession of the apartment could be given on October first. It was, therefore, only in case of the execution of a lease that the defendant was to store the plaintiff's property. Thereafter and on September seventh, according to the testimony of plaintiff's father, the lease of the apartment was executed by the defendant and therein was contained the express provisions above quoted that any trunks or property stored with the landlord by the tenant should be at the tenant's risk; and it was expressly stipulated and agreed by the parties that the landlord should not be liable for any loss, damage or injury to, or theft of, the property left therein, and that such property of the tenant accepted and received by the landlord was to be held entirely at the risk and hazard of the tenant, and that the landlord was not liable or responsible for any damage thereto or theft thereof, whether arising by negligence or otherwise. It would, therefore, seem that the alleged special contract under which the plaintiff seeks to recover herein was merged in the provisions of the lease above referred to. Following the execution of the lease and within a few days thereafter the trunks and packing case of the plaintiff were brought to the defendant's hotel and left there by the plaintiff's father; and at that time the defendant delivered its checks upon which was plainly indorsed that the property receipted for was stored gratuitously; and it was expressly agreed thereon by the holder of such checks to whom the same were delivered that in accepting the same such storage would be entirely at the risk of said holder and the owner thereof, and that the defendant hotel should not be liable for loss or damage thereto, whether caused by negligence, fire, theft or any other cause whatsoever. It thus appears conclusively that the goods for which the plaintiff has recovered were delivered to the defendant as a gratuitous bailee upon the express stipulation and condition that the defendant should not be liable for loss thereof, either by way of theft, negligence or otherwise. Under such conditions it is impossible for us to see how the defendant can be held liable for the loss of the goods in question. The defendant was a gratuitous bailee of the plaintiff's property without any compensation or benefit whatever. As such bailee the defendant was only called upon to exercise reasonable care in guarding the plaintiff's property, and was liable alone for gross negligence. The testimony on the part of the plaintiff is that when said trunks and

packing case were left with the defendant, they were at once taken to the storeroom in the basement of the hotel. Fluegelman, managing director of the defendant, testified that there was kept in connection with the hotel a storeroom in the basement for trunks, which was always protected by a watchman and the receiving and shipping clerks in charge. No evidence whatever was given showing any acts of negligence on the part of the defendant. Under such conditions the defendant, as a gratuitous bailee and depositary without compensation for the benefit of the bailor, would only be liable upon proof of gross negligence. (*Ouderkirk* v. *Central Nat. Bank of Troy*, 119 N. Y. 263; *Gottlieb* v. *Wallace Wall Paper Co.*, 156 App. Div. 150; *St. Paul Fire & Marine Ins. Co.* v. *Trice Motor Co.*, 203 id. 218.)

The judgment appealed from should be reversed, with costs, and the complaint dismissed, with costs.

CLARKE, P. J., SMITH, FINCH and MARTIN, JJ., concur.

Judgment reversed, with costs, and complaint dismissed, with costs.