## NORMAN v. UTAH HOTEL CO.

No. 3759.    Decided April 13, 1922.    (206 Pac. 556.)

1. WITNESSES—WITNESS WAS PROPERLY ALLOWED TO USE COPY OF ORIGINAL LIST OF GOODS, STORED BY HIM AND LOST, TO REFRESH MEMORY. In an action by the owner of goods, lost while in storage, against a hotel keeper, for their value, permitting the owner to refresh his memory of the articles lost from a typewritten list dictated by him from his original written list, which he had destroyed, was not error.[1]

2. EVIDENCE—ADMISSION OF TESTIMONY AS TO PRICE PAID FOR GOODS IN ACTION TO RECOVER THEIR VALUE HELD PROPER. In an action by an owner of goods, lost while in storage, against a hotel keeper, for their value, testimony by the owner as to what he paid for the goods was evidence of their market value and was properly admitted in view of an instruction that the jury could allow only for the market value of the lost property.[2]

3. EVIDENCE—ADMITTING, IN ACTION TO RECOVER VALUE OF GOODS LOST, EVIDENCE OF WHETHER PRICES OF GOODS TESTIFIED WERE WHOLESALE OR RETAIL NOT ERROR. In an action by the owner of goods, lost while in storage, against a hotel keeper, for their value, permitting the owner to testify that prices of goods given in evidence by him were wholesale prices, over objection that question called for conclusion of witness, was not error.

---

[1] Sagers v. International Smelting Co. et al., 50 Utah, 428, 168 Pac. 105.

[2] Smith v. Mines & Smelter Supply Co., 32 Utah, 26, 27, 88 Pac. 683.

4. EVIDENCE—WITNESS HELD QUALIFIED TO TESTIFY CONCERNING
   MARKET VALUE OF GOODS LOST, AND WEIGHT OF TESTIMONY WAS
   FOR JURY. Where a witness had personal knowledge of what
   silks and oriental goods sold for in the vicinity of, and in the
   city in, which such goods were lost in storage, he was qualified
   to testify concerning their market value where they were lost,
   and the weight to be given such testimony was a jury question.

5. INNKEEPERS—WHETHER HOTEL KEEPERS NEGLIGENT IN DELIVERING
   GOODS TO WRONG PERSON HELD FOR JURY. In an action by the
   owner of lost goods against a hotel keeper, where the goods
   were left in a trunk for which defendant gave plaintiff a check,
   and after plaintiff left the hotel, defendant sent the trunk on
   receipt of a letter from another person describing the trunk,
   whether hotel keeper was guilty of such gross negligence as to
   make it liable, *held* for the jury.

6. INNKEEPERS—CHARGE AS TO LIABILITY OF BAILEE WITHOUT PAY
   HELD CORRECT. In an action by an owner of lost goods against
   a hotel keeper, an instruction that a hotel keeper is the in-
   surer of goods of his guest, but if plaintiff left the hotel and
   left his trunk in storage, he was no longer a guest, and that
   defendant was liable for its loss only if guilty of gross negli-
   gence, was equivalent to a direct charge that defendant was
   responsible only for gross negligence, and was not erroneous
   for failing to charge that the relation of hotel keeper and guest
   had ended at the time of the loss.

7. APPEAL AND ERROR—VERDICT SUPPORTED BY EVIDENCE NOT SET
   ASIDE AS EXCESSIVE. Though a verdict for damages may appear
   excessive to an appellate court, it cannot interfere where there
   is evidence to support the verdict.

Appeal from District Court, Third District, Salt Lake
County; *G. A. Iverson*, Judge.

Action by Sidney Norman against the Utah Hotel Com-
pany. From judgment for plaintiff, defendant appeals.

AFFIRMED.

*Bagley, Fabian, Clendenin & Judd*, of Salt Lake City, for
appellant.

*C. A. Gillette*, of Salt Lake City, for respondent.

FRICK, J.

The plaintiff, respondent here, brought this action against the Utah Hotel Company, a corporation operating the Hotel Utah in Salt Lake City, hereinafter called appellant, to recover the value of a trunk and its contents, which he alleged he, as a guest of the appellant, had left in its care and which it had refused to deliver to him upon his demand.

For some reason three separate causes of action are stated in the complaint. It is not necessary, however, to specifically refer to the allegations of any of the causes of action of the complaint further than to say that, after alleging the acts through which respondent lost his trunk and the value of its contents, he prayed to recover judgment for such value. The appellant, after admitting that it is a corporation and that it operates the Hotel Utah, denied all other allegations of the complaint.

The facts, as they are made to appear from the record, in substance, are: That the respondent is an Assyrian, who, at the times mentioned in the complaint, and for several years prior thereto, was engaged in the business of buying and selling silks, oriental goods, etc., in different parts of the country, including Salt Lake City and vicinity; that his method of business was to buy goods in New York City, and, after having them shipped to the west, he would sell them to his customers living in Utah, Idaho, and adjoining states; that he had no regular abiding place, but, in the course of his business, frequently came to Salt Lake City, and, upon such occasions he would register at the Hotel Utah as a guest and from that place would go upon trips in different directions, taking some of his goods with him while leaving some in his trunk at the hotel; that he registered at the Hotel Utah as a guest some time in January, 1920, at which time he brought his trunk filled with goods to the hotel; that, on the 3d day of February, 1920, he informed the porter employed by the hotel company that he intended to leave the hotel and asked the porter to give him a check for his trunk, which he desired

to leave at the hotel during his absence; that the porter produced the check, one-half of which he attached to the trunk and the other half he delivered to the respondent for identification; that respondent went away leaving his trunk at the hotel, going to various points in the states of Idaho and Washington to carry on his business as before stated; that some time in August, 1920, he returned to the hotel and presented the check he had received as aforesaid to the porter and requested that his trunk be sent to his room which had been assigned to him in the hotel; that, after making diligent search, the porter was unable to find the trunk; that, after some further time had elapsed, the respondent again demanded his trunk and he was then informed by the hotel manager that it could not be found; that thereafter the hotel manager, presented to him the following letter:

> "The Only Fireproof Hotel in Butte.
> "Leggat Hotel.
> "Alex Leggat, Manager.
> "Butte, Montana, April 19, 1920.
>
> "Dear Porter: Please forward by express, collect, my trunk that you have in storage and I will mail you personally a $2.00 bill when I receive it.
>
> "It is marked like this: | 25 | and is a black Hartman wardrobe trunk.
> | H. B. |
> "Very truly yours, | S. N. |
> "[Signed]  Sidney Nomak,
> "Hotel Davenport, Spokane, Washington."

The description in the foregoing letter was a correct description of the markings on the check attached to the trunk, and respondent was informed that his trunk had been shipped to the writer of the letter, in accordance with the directions stated therein.

The evidence further showed that the hotel management shipped the trunk without making any inquiry whatever with regard to whether the respondent had authorized the writing of the letter and without requiring the check to be returned to it before delivering the trunk. It was however shown that after respondent had demanded the trunk and it could not be found in the hotel, the hotel management attempted to locate the writer of the letter and to trace him through the

Hotel Davenport at Spokane and otherwise; but no trace of either him or the trunk could be discovered.

After respondent had proved the value of the contents of the trunk, the jury returned a verdict in his favor, upon which judgment was duly entered, from which this appeal is prosecuted.

Numerous errors are assigned. In its first assignment, appellant insists that the court erred in permitting the respondent to refresh his recollection from a memorandum in which he had made a list of the articles he had left in the trunk. In that connection it was made to appear that, while respondent could not write English, he, nevertheless, could speak and read that language when printed, to some extent; that, when he left the trunk at the hotel, he had made a list of the articles contained in the Assyrian language and that thereafter he had a typist copy the list in the English language from his dictation. At the trial he was asked whether he knew the articles he had left in the trunk and to state them; that he then, in order to refresh his recollection, and after testifying that after he had the typist make the copy he had destroyed the original list, he, over appellant's objection, was permitted to use the typewritten memorandum as a means of refreshing his recollection. Counsel for appellant excepted to the ruling of the court and now insists that it erred in overruling appellant's objections to the admission of respondent's evidence respecting the contents of the trunk. The contention is not tenable. The rule applicable where a witness merely uses a memorandum or similar writing to refresh his recollection is well and tersely stated by the author in 1 Wigmore, Evidence, p. 852. It is there pointed out that, under such circumstances, it is not material whether the memorandum is an original or a copy. Mr. Wigmore states the rule in the following language:

"That the paper is a copy, not an original, is also no essential fault. The question is whether in fact, it is genuinely calculated to revive the witness' recollection and for this purpose a copy may conceivably be entirely satisfactory. The radical difference of principle between this use and that of a copied record of past recollec-

tion is plain; there is here no necessity of accounting for the original in any way."

That rule stated by Mr. Wigmore is approved by this court in *Sagers* v. *International Smelting Co. et al.*, 50 Utah, 428, 168 Pac. 105, although the question here presented was not directly involved in that case. We are of the opinion that the ruling of the district court was clearly within the rule as the same is stated by Mr. Wigmore. This assignment must therefore be overruled.

It is next contended that the district court erred in permitting the respondent to answer the following question: "What did you pay for that?" when he was attempting to prove the value of some articles which he had testified were left in the trunk. Counsel insist that the only competent evidence respecting the value of an article is its market value or price and not what one may have paid for it. No doubt, with certain limitations, the contention is sound. There are, however, circumstances under which what was paid for an article may be competent evidence of its market value. Indeed, it may be very strong evidence of such value. While it is true that, when an article has a market value, it is that value that must control, there, however, is no absolute or inflexible rule by what means or method the market value of an article may be establsihed. The original cost price may, therefore, under certain circumstances, be considered as evidence of market value. In proving the market value of an article, therefore, it is not always necessary to use the precise formula, "market value" in the question where it is clear that that is the value that is sought to be proved. Courts look to the substance rather than to the form of proceedings, and, although the trial court may, in a particular case, have allowed considerable latitude in proving the market value of an article, yet, unless it is made to appear that prejudice has resulted through the course pursued by the court, this court may not reverse a judgment for mere technical errors. Moreover, the court in this case charged the jury that they could allow only for the market value of the trunk and its contents.

Under the circumstances of this case, we are of the opinion that what the respondent paid for the goods was at least some evidence of its market value. See *Smith* v. *Mines & Smelter Supply Co.*, 32 Utah, 26, 27, 88 Pac. 683, where the subject is discussed. This assignment must therefore likewise fail.

It is next insisted that the district court erred in permitting respondent to answer the following question: "In regard to these various articles you have described, except the trunk, I will ask you what kind of prices they are, retail, wholesale, or what? Appellant's counsel said: "I object to that as calling for a conclusion of the witness; incompetent, irrelevant, and immaterial." The could overruled the objection and the witness answered: "This is wholesale, except the trunk." It is seriously contended that the court's ruling constituted prejudicial error. We confess our inability to perceive wherein the question of counsel or the answer of the witness could have prejudiced appellant. The assignment cannot prevail.

It is next contended that the respondent had not shown himself qualified to testify respecting the market value or price of the articles left in the trunk at Salt Lake City. We think the contention, untenable. Respondent, in his testimony, had shown that he had at least some personal knowledge respecting the market price that similar goods or articles sold for in Salt Lake City and its vicinity. That was all the knowledge that was necessary to qualify him to testify. It was not necessary that he should have been engaged daily in the sale of those articles personally, but if he knew what similar articles were selling for by merchants at Salt Lake City and in its vicinity, the knowledge was sufficient to qualify him to testify. Respondent therefore having shown himself qualified to testify, the weight that should be given to his statements in view of his knowledge and the circumstances was a question for the jury.

The next two assignments of error relate to the court's denial of appellant's motion for nonsuit and its refusal to direct the jury, to return a verdict in its favor. These two errors present the same question and may be considered together.

Counsel for appelant insist that, when the trunk was checked
by appellant and left in its custody, the relation of innkeeper
and guest had ceased to exist and therefore the relationship
existing between them was one merely of gratuitous bailment.
It is contended therefore that, unless the appellant was shown
to have been guilty of gross negligence in delivering respond-
ent's trunk to another than himself and without the return
of the check, respondent cannot recover. For the purpose of
this decision we shall assume that, at the time the respondent
had his trunk checked he had severed the relationship of inn-
keeper and guest and that appellant had ceased to be an
insurer of the safety of his trunk, and that it thenceforth was
liable only as a gratuitous bailee and hence was required to
exercise slight care only in taking care of respondent's trunk
and property left in his care. In other words, appellant was
liable only for what, in law, is termed to be gross negligence.
Appellant had no right, however, to deliver respondent's
trunk to any one who might demand it without his consent.
Appellant, in issuing the check for the trunk, had selected
its own method of identifying the person who had a right to
demand possession thereof. It was not required to surrender
the trunk to any one unless the check was produced and sur-
rendered to it or accounted for in its satisfaction. Having
thus led the respondent to believe that his trunk would be
stored for him until he made demand therefor, or until he
delivered the check to some one to whom the trunk might be
delivered, it was the duty of appellant to exercise at least
some care to see to it that respondent's trunk remained in its
possession or under its control, until called for by some one
having a right to its possession, by producing the check or
accounting therefor. Notwithstanding the fact, however, that
it had issued and delivered the check as a means of identifica-
tion to respondent, and as evidence of his right to demand the
same, it shipped it to a person other than respondent, without
making any inquiry respecting the check or whether
the person demanding the trunk had any right what-
ever thereto or whether he had any authority whatever
to demand the trunk. It seems to us that, in view of all the

circumstances and in view of the conduct of the parties, the question, in this jurisdiction, whether the appellant was guilty of gross negligence or not was a question for the jury.

True, appellant cites and relies upon some cases in which the courts hold that the evidence in those cases, as a matter of law, was insufficient to establish gross negligence. The cases cited are: *O'Brien* v. *Vaill*, 22 Fla. 627, 1 South. 137, 1 Am. St. Rep. 219; *Glenn* v. *Jackson*, 93 Ala. 342, 9 South. 259, 12 L. R. A. 38; *Hoffman* v. *Roessle*, 39 Misc. Rep. 787, 81 N. Y. Supp. 291; *Hisch* v. *Anderson Hotel Co.*, 50 Pa. Super. Ct. 387. See, also, *Di. Dio* v. *Robino* (Sup.) 116 N. Y. Supp. 702; *Gottlieb* v. *Wallace W. P. Co.*, 156 App. Div. 150, 140 N. Y. Supp. 1032; *Campbell* v. *Kelin*, 52 Misc. Rep. 123, 101 N. Y. Supp. 577. Other cases are cited to the same effect, but it is not necessary to refer to them. While in some of the foregoing cases the courts, were somewhat liberal in holding that the evidence in those cases did not establish gross negligence, as matter of law, yet in all of them there is some feature or circumstance which distinguishes them from the case at bar. As we view it, in order to hold that the evidence in this case is insufficient to establish gross negligence as a matter of law, we would be compelled to depart from the uniform holdings of this court that, under the circumstances here disclosed, the question is one of fact for the jury and not one of law for the court. We must therefore decline to hold that the evidence is insufficient to establish gross negligence on the part of appellant and hold that that question was properly submitted to the jury. What has been said also disposes of the assignment that the court erred in refusing to direct a verdict in favor of the appellant.

It is next urged that the court erred in refusing appellant's requested instruction which reads as follows:

"It is proved here that, shortly after plaintiff checked his said trunk, that he left said defendant's hotel and ceased to be a guest thereof; and, therefore, to enable the plaintiff to recover in this action he must prove that he delivered the property set out in his complaint to the defendant, that it has not been delivered back to him, and that the loss of said property, if lost, has been occasioned by the gross negligence of the defendant."

The court, of its own motion, charged the jury as follows:

*"You are instructed that a hotel keeper or innkeeper is the insurer of the goods left by a guest with such hotel keeper or innkeeper; but in the case now before you, if you find from the evidence that on the day in question; to wit, on or about February 3, 1920, the plaintiff, after checking his trunk, paid his bill and departed from the defendant hotel, you are instructed that he ceased to be a guest, and the duty of the defendant was no longer to insure the plaintiff's property or to protect it absolutely,* but was only to exercise slight care in respect to it, and, in such event, the defendant is not to be held liable unless the jury find that the defendant was guilty of gross negligence. In this connection the court instructs you that one, who undertakes, without hire or reward, to take care of the chattels or property of another is required to use in its performance such care as men of common prudence, however inattentive, ordinarily take of their own affairs, and will be liable only for bad faith or gross negligence which is an omission of such degree of care."

Counsel for appellant insist that they were entitled to a direct charge to the jury that, unless they found appellant guilty of gross negligence, respondent could not recover. We think that such is clearly the effect of the court's charge to the jury. The language of the instruction is that the ''defendant is not to be held liable unless the jury find that the defendant was guilty of gross negligence.'' The court further told the jury that a bailee without reward is ''liable only for bad faith or gross negligence.'' That was repeated in several other instructions. We cannot conceive how it can successfully be contended that the charge given by the court, considered as a whole, did not fully and fairly cover every proposition which counsel insist were contained in their request and which they insist they were entitled to have given to the jury.

It is, however, also insisted in this case that that portion of the court's charge which is italicized was erroneous and should not have been given. While it may be that that part could have been omitted, yet, in view of what occurred during the trial and the contentions of counsel as disclosed by the record, we can well understand why the court made the explanatory statement to the jury. In view of the whole record, the explanatory statement was favorable rather than preju-

dicial to the appellant. At all events it was harmless.

It is next contended that the amount allowed by the jury is excessive and that their finding in that regard is not supported by the evidence. While it is true that, if the writer had been a juror, he, in view of the record, would have felt inclined not to allow respondent as much as the jury allowed him, yet this is so because the writer entertains some doubts respecting the correctness of respondent's statements with respect to the value of his goods and 'the number of articles that he had left in the trunk, and not because there is no evidence in support of the amount found by the jury. Indeed, under the evidence, the jury might have allowed a larger amount. The writer therefore would have found a lesser amount merely because he doubts respondent's statements respecting the matters before stated and not because there was no evidence. That question was, however,     7 within the exclusive province of the jury to determine and they were so instructed by the court. This court having no right to pass upon either the credibility of the witnesses or the weight that should be given to 'their statements can therefore not interfere although upon the evidence, as it appears in the bill of exceptions, it would have arrived at a different conclusion than did the jury.

Upon the whole record, therefore, we have no alternative save to affirm the judgment. Such is the order, with costs.

CORFMAN, C. J., and WEBER, GIDEON, and THURMAN, JJ., concur.