## TRIPP v. BAGLEY.

No. 4717.   Decided November 19, 1929.   (282 P. 1026.)
Rehearing Denied December 17, 1929.

*King & King* and *Stewart, Alexander & Budge,* all of Salt Lake City, for appellant.

*Wm. B. Higgins,* of Fillmore, for respondent.

CHERRY, C. J.

This action is to recover damages, both actual and punitive, for flooding water upon lands belonging to the plaintiff and his assignor, Maud Tripp Morehouse, during each of the irrigating seasons of the years 1919, 1920, and 1921. The wrongful acts complained of and the damages suffered for each season are stated in six separate causes of action in the plaintiff's complaint. Except as to time, the several causes of action are similar, and in substance set forth that the plaintiff (or his assignor) was the owner of certain lands in Juab county valuable for growing crops and pasturing animals, and upon which crops and pasture were growing; that the defendant wrongfully entered upon the lands described, and constructed ditches and canals thereon, into which he diverted large quantities of water; that the ditches were not of sufficient capacity to carry the waters turned into them; that the ditches became filled with sand, gravel, and sediment, and overflowed and discharged large quantities of water, sand, and gravel upon the adjoining lands, causing the same to become soaked and saturated, and destroying the crops and pasture growing thereon; that a certain road leading from the plaintiff's house on the lands described to a public highway had been soaked, saturated, obstructed, and destroyed; and that, by reason of the wrongful acts complained of, he had been deprived of the use of his farm and the means of access thereto, to his damage in a sum specified for each season.

Each cause of action contained an allegation that the acts complained of were done willfully, unlawfully, maliciously, and wantonly, with intent to vex, annoy, oppress, and injure, etc., on account of which punitive damages were claimed.

Upon general denials by the defendant and a claim of right to use ditches and natural channels for conducting water over the lands claimed to have been injured to his own lands adjoining below for irrigation, the case was tried

by jury, resulting in a verdict for the plaintiff for $2,100, of which $650 was for actual damages sustained by the plaintiff, $450 actual damages sustained by the plaintiff's assignor, and $1,000 punitive damages.

The appeal is from a judgment for $2,100 entered upon the verdict.

The principal complaints of the appellant are that the court erred concerning the measure of damages applied in the case and in submitting to the jury the question of punitive damages. Other assignments of error are stated in the brief, but we think them so plainly untenable as not to warrant special mention.

As proof of the damages claimed, the court permitted the plaintiff to prove the usable or rental value of the lands affected and the extent to which that value was diminished by the acts of the defendant complained of, and the jury was instructed:

"You are instructed that if you find that the plaintiff is entitled to recover in this action, you should award him in actual damages such sum as, in the exercise of discretion, you deem will be reasonable compensation for the diminution, if any, in the usable value of said lands, or some portion thereof, belonging to or in the possession of the plaintiff and his assignor, Maud Tripp Morehouse, or either of them, in any or all of the years 1919, 1920, and 1921, any such diminution to be determined by the difference, if any, in the value of the use of such lands, during said periods without floods, seepages, or consequent conditions, of the character here complained of, and the value of such use during the continuance of the floods, seepages, or conditions caused thereby, if any you should find, during said periods. And you are instructed that in estimating the amount of such damages, if any, you should take into consideration the value of the crops if any which the plaintiff and his said assignor may or would, excepting for any such floods, seepages, or the conditions caused thereby, have made from said lands, during any or all of said periods, and the injuries, if any, sustained by the plaintiff and caused by any such floods, seepages, or conditions caused thereby, by reason of his being deprived of the use of a portion of his said lands for pasturage, or by reason of the passage to and from, or over, his said lands, being rendered more inconvenient or expensive, if you should find any of these facts from the evidence; and you should

take into consideration all other facts and circumstances shown by the evidence, bearing upon the injuries, if any, to said lands, or the property rights incidental thereto."

Appellant contends that the admission of the evidence referred to and the instruction quoted were erroneous, because the action was a plain case for damage to crops, and that the measure of damages for the destruction or injury to crops is the difference between the market value of the crop before and after the alleged damage, citing *Cleary* v. *Shand*, 48 Utah 640, 161 P. 453, and *Sharp* v. *Cankis Gianulakis*, 63 Utah 249, 225 P. 337.

If the case at bar was an action alone for the destruction of crops, the rule of damages applied in the cases cited would be applicable. But this action is clearly more than an action to recover for injured crops. It is expressly alleged that, by reason of the acts of the defendant, the "plaintiff was deprived of the use and enjoyment of his said farm, including the means of ingress and egress to and from the same." The evidence of the plaintiff generally supports the allegations of his complaint, and was to the effect that not only were his crops injured, but his use and occupation of his lands seriously interfered with by the flooding of water and the depositing of sand and gravel thereon and the damage and obstruction to his road. To limit the plaintiff to damages for the injury to particular growing crops under the circumstances would be quite unjust. It is apparent from his evidence that he suffered additional damages.

8 R. C. L. 480, says:

"Since the owner of real estate is entitled to use it in its present condition, as against one who injures such property he is entitled to compensation for any depreciation in its market value, or value for use, or for any permanent injury to the land itself, or for the loss of its use."

The measure of damages for injury to real property is not invariable. 17 C. J. 880. Consideration is given to the

peculiar circumstances of each case. Where the thing destroyed or injured, although a part of the realty, has a distinct value without reference to the realty on which it stands or from which it grows, the recovery is for the value or depreciation of value of the thing destroyed. 17 C. J. 881. Such was the situation in the Utah cases cited by appellant. But where, as in the case under review, the injury to crops was but one of several elements of damage, all of which disturbed and interfered with the use of the land, and the action was brought to recover compensation for the deprivation of the use and enjoyment of the lands, the measure of damages applied by the court was as favorable to the defendant as he was entitled to, and is supported by abundant authority. 8 R. C. L. 483; 17 C. J. 883; 3 Kinney on Irr., p. 3134, see case note; 3 L. R. A. (N. S.) 973.

The next question to be considered is whether the case as made by the plaintiff warranted the court in submitting the claim for exemplary damages to the jury. Appellant contends that the evidence was insufficient, as a matter of law, to justify the court in submitting the question to the jury. It may be stated that the court instructed the jury that punitive damages were not recoverable for injuries to the lands of the plaintiff's assignor, but, if it was found that the injuries complained of to the plaintiff's lands were inflicted maliciously or wantonly, an award of punitive damages in addition to actual damages might be made, etc. And, as before stated, an award of $1,000 punitive damages was included in the verdict and made a part of the judgment.

The relevant facts pertaining to this phase of the case are that the plaintiff and defendant owned adjoining farming lands upon which water was used for irrigation. The source of their water supply was the same stream which in its natural course flowed across the plaintiff's lands to the defendant's lands. There is no question of the defendant's right to have the water which he was entitled to use flow

across the plaintiff's land. At least two channels had for many years been used for this purpose. From time to time these channels were filled up and their courses more or less changed by the sand and gravel washed down by the high waters of the stream in the early summer. The defendant's right to conduct water across the plaintiff's land was not denied. The dispute was as to the location of the channels which he was entitled to use. The defendant contended that he merely reopened and repaired channels formerly used, while the plaintiff claimed that he constructed an entirely new ditch over and through the best part of plaintiff's lands where none had ever existed before.

Certain statements by the defendant are claimed by the plaintiff to indicate bad motives and malice.

The plaintiff testified that, when the defendant in the year 1919 was engaged in plowing the ditch in question, the plaintiff went to him and asked: "Rene, what are you doing here?" Defendant replied in a sneering manner, "I should think you could see." Where upon the plaintiff said, "I forbid you to make any ditch here on my land." Defendant replied, "Oh, George, that forbidding is getting to be an old thing. Why don't you start something now?"

Another conversation was put in evidence between defendant and one Jacaway, a freighter who had a tent pitched on the plaintiff's land in 1919. Jacaway, seeing the defendant cleaning out a ditch, walked up to him and said, "You are going to cover up all the grass." The defendant replied, "It will all be covered up before I get through."

In the absence of any act in reckless or willful disregard of plaintiff's rights, or the doing of any unnecessary or purely malicious injury to the plaintiff, we can see nothing in the language used by the defendant to indicate any willful intention to injure the plaintiff.

From the whole circumstances it is clear that the defendant claimed and believed that he had the right to construct

the ditch complained of. He consistently asserted that right before the jury, and offered substantial evidence in support of it. While the question was resolved against him, we find no warrant for saying that he did not have reasonable grounds for belief in his right. The evidence presents no feature of malice or wantonness. There was nothing to indicate that the construction of the ditch by the defendant was done to harass, vex, annoy, or injure the plaintiff. At the trial it was clearly shown that the defendant had a right of way over the plaintiff's land for conducting water for irrigation. At the time the ditch was constructed the the plaintiff denied such right, and forbade the defendant "to make any ditch" on his land. It was not then a question of the particular location of the ditch. The circumstances do not support the assertion that the defendant willfully and maliciously constructed the ditch over the best part of plaintiff's lands for the purpose of unnecessarily injuring the plaintiff when he could have served his own purposes equally well by constructing it at another place.

"Exemplary, punitive, or vindictive damages are such damages as are in excess of the actual loss, and are allowed where a tort is aggravated by evil motive, actual malice, deliberate violence, oppression or fraud." *Murphy* v. *Booth*, 36 Utah 285, 103 P. 768, 770.

Whether there is evidence justifying exemplary damages is a question of law for the court, and, where there is no evidence, it is error to submit the issue to the jury. ■■ *Moody* v. *Sindlinger*, 27 Colo. App. 290, 149 P. 263; *Rugg* v. *Tolman*, 39 Utah 295, 117 P. 54, 57.

In *Rugg* v. *Tolman*, supra, it was laid down that:

"The law does not, and in the nature of things cannot, allow exemplary or punitive damages for mere negligence, although gross, nor for mistakes that may affect the rights of others, unless some act or acts indicative of bad motives or an intention to oppress or wrongfully vex and harass another is made manifest."

We find no basis in the evidence for the allowance of exemplary damages, and conclude that the trial court erred in submitting that question to the jury.

For this error the judgment appealed from cannot be sustained. It is not necessary, however, to unconditionally reverse the judgment and order a new trial.

It is the judgment of this court that, unless the plaintiff, within 20 days from the filing of this decision, shall file in this court a remittitur of $1,000 of his judgment as of the date of its rendition, the judgment appealed from be reversed and a new trial granted, and that appellant recover his costs on appeal. If such remittitur be filed, the judgment shall be modified in accordance therewith, and, as so modified, affirmed, with no costs allowed to either party.

STRAUP, ELIAS HANSEN, EPHRAIM HANSON, and FOLLAND, JJ., concur.