## HAYCRAFT v. ADAMS.

No. 5217. Decided August 3, 1933. (24 P. [2d] 1110.)

*King & King* and *Parnell Black,* all of Salt Lake City, for appellant.

*R. L. Beezley* and *James Devine,* both of Salt Lake City, for respondent.

MOFFAT, Justice.

The complaint in the case in this appeal contains two causes of action. Both sound in trespass, the parties have treated the first cause of action as one for conversion of furniture. The second is for trespass to realty at the time of the alleged conversion of the personal property referred to in the first cause of action.

Damages for the alleged conversion, damages for the alleged trespass, and punitive or exemplary damages are prayed for.

W. H. Adams, the defendant and appellant, is an auctioneer and furniture dealer. He has been engaged in such business in Salt Lake City for about fifteen years. During the month of December, 1930, Sadie Mae Haycraft, wife of respondent, J. I. Haycraft, called Mr. Adams upon the telephone and informed him that she desired to sell her furniture and wanted him to conduct an auction sale at her home at 2619 Highland drive. Mr. Adams arranged to conduct the sale. A few days later Mrs. Haycraft again called Mr. Adams and said: "Mr. Adams, my husband is very ill in the hospital in California. I just received a telegram from him and must go to him immediately. Would you buy the furniture and auction it yourself?"

*Mr. Adams replied that he would if it would help her.* He then went to her home and examined the furniture, listed it, and placed a valuation on it. He was informed by Mrs. Haycraft that there was a balance due on the purchase price of the piano. Mr. Adams communicated with the music company who held a title retaining contract upon the piano and found there was still $120.05 due on the contract, and was informed if he would pay $110 it would be accepted as payment in full. Thereupon Mr. Adams paid Mrs. Haycraft $300 for the furniture and the music company $110 for the piano.

Mrs. Haycraft delivered the key to the residence to Mr. Adams, and authorized him to conduct the sale of the furniture in the home, stating that she was leaving that night. She also requested Mr. Adams to rent the home after the sale, and have the rent paid to a trust company designated by her.

The sale of the furniture was advertised to take place on the 16th day of December, 1930. Mr. Haycraft, the respondent, who had been away from home for six or eight weeks on business, arrived home about 1 o'clock in the morning of December 16th, the day fixed by the advertisement for the sale of the furniture. About 9:30 on the morning of the 16th, when two of appellant's sons went to the Haycraft home to sell or remove the furniture, they found respondent in the home. Up to this point there is no disagreement between the parties. What conflict there is arises from this time on.

Appellant's testimony is to the effect that Mr. Haycraft was rather excited. Respondent was advised that Mr. Adams had purchased the furniture from Mrs. Haycraft; that, in pursuance of the purchase of the furniture and authority given by Mrs. Haycraft to enter the home, the purpose was to proceed with the sale. There is a conflict between the parties as to what was said by them during the period while both were in or about the premises. Respondent testified that he ordered the appellant off the premises. Appellant denies this, and says that respondent tacitly consented and made no objection to the sale and removal of the furniture. Respondent left the premises, and during respondent's absence appellant removed the furniture.

Respondent claims to be the owner of the furniture, asserts his wife had no right or authority to sell it, and insists appellant was a trespasser, and seeks to recover damages as heretofore indicated. The plaintiff recovered judgment. The case was tried to a jury. Upon the close of defendant's case, the defendant moved the trial court for an instructed verdict. Numerous errors are assigned. In the view we

take of the case it is not necessary to discuss more than one or two of the assignments.

There was no competent evidence submitted by plaintiff from which the value of the personal property could be determined at the price or value fixed by the jury. The only evidence offered by plaintiff and received by the court related to the cost of the furniture purchased from three to seven years before the time of the alleged conversion. We are not prepared to say that it was reversible error for the court to permit the plaintiff to produce evidence as to the cost of the furniture. Such testimony, however, standing alone, cannot support a verdict. The measure of damages for the conversion of property is the market value, if the property has a market value, at the time of the conversion.

When it came to instructing the jury, the court properly instructed the jury in that regard. The plaintiff produced no evidence from which market value could be deduced, nor was it shown that the property had no market value. Cost of an article, as indicated by the trial court, may be one way, or one of the factors that may be used in a proper case, of getting at the question of market value; but, standing alone, it is not competent evidence. The cost of an article may or may not be the market value at the time of purchase; an article may be purchased for sentimental reasons, or other reasons may enter into a purchase price contract that produces a variance from the market value of articles having a market value. Years of time, use, purpose, and individual elements tend to create a departure from what was once a fair market value of an article. If the property had been destroyed by fire or other casualty, so that the only way a value might be arrived at, might be by way of cost, wear, tear, obsolescence, comparison with like articles of known or ascertainable value at the time of the conversion, when all property connected up may render cost an evidential factor, even then, however, the cost would be of necessity have to bear some definite or ascertainable

relation to market value. No such attempts to connect cost with market value were made in this case by plaintiff.

Thus, had the defendant rested his case, upon the close of plaintiff's evidence, and made a motion for a directed verdict for nominal damages only, the court would have been required to instruct the jury upon the basis of the evidence as submitted at that time, and would have been compelled to instruct the jury upon that basis as to the measure of damages.

As heretofore indicated, special cases and exceptional circumstances permit the allowance of a witness to testify as to the cost or price paid or reproduction value of the thing as a starting point; but, unless this is connected by some competent evidence that brings the cost or purchase price into relation with market value except in certain cases of total loss or destruction of property, the evidence of cost or purchase price becomes incompetent and immaterial. This court has been liberal in applying this rule, as will be observed from the following cases: In the case of *Smith* v. *Mine & Smelter Supply Co.*, 32 Utah 21, 88 P. 683, 685, the action was one for the recovery of damages for injury to and destruction of personal property caused by an explosion. The court there said:

"In permitting evidence of the cost of the article in fixing its value, regard must therefore be had to all the conditions and circumstances; and where the time at which the cost is fixed, in view of all the circumstances, is too remote from the time of injury, the cost may not afford any guide whatever, and should not be permitted. In such cases the present market value of the article when new, if it has no other market value, would afford a better guide as a starting-point, and the actual value of the article should be determined by deducting from the cost price such an amount as its past use and wear would reduce its value in comparison to a new article of like kind. But in any case resort to the cost should be had only for the purpose of a starting-point, and as a means to ascertain the true or actual value of the article. It is in this sense that the courts lay down the rule, as we understand it, that cost is some evidence of value, and hence, in a proper case, may be admitted. The object of the law in all cases is to compensate the injured person for his loss—no more, no less. To attain this object,

the rule of market value has been adopted as the one more nearly approximating the end in view. There are, however, evceptional cases where the rule cannot be applied to its full extent. When such is the case, the rule is to be followed as nearly as the circumstances of the case permit; but a party is not to be deprived of his property simply because his case may not fall within the regular rule governing the measure of damages. * * *

"The circumstances of this case in respect to proving actual damages were exceptional. It may be true that, if respondent had all the articles that were destroyed by the explosion piled up in her dooryard or house and offered to sell them, she might not have realized the amount the jury allowed her. She, however, had them, not for disposal in that way, but for daily use in her home, and we think she was entitled to recover the actual value in accordance with the rules laid down by the court. The cost price was used as a starting-point or as a basis merely from which to determine the actual value. This was clearly the theory on which the court proceeded, and we think his rulings were not only fair under all the circumstances, but in accordance with the principles of law governing exceptional cases like the one at bar, and that they are supported by the authorities. *Shea* v. *Hudson*, 165 Mass. 43, 42 N. E. 114; *Hawver* v. *Bell*, 141 N. Y. 140, 36 N. E. 6; *Hangen* v. *Hachemeister*, 114 N. Y. 566, 21 N. E. 1046, 5 L. R. A. 137, 11 Am. St. Rep. 691; *Sullivan* v. *Lear*, 23 Fla. 463, 2 So. 846, 11 Am. St. Rep. 388; *Hausman* v *Mulheran*, 68 Minn. 48, 70 N. W. 866; Abbott's Trial Ev. (2d Ed.) 378, 379; Lawson on Exp. & Opinion Ev. 481, 482; *Johnson* v. *Railway Co.*, 7 Utah 346, 26 P. 926."

In the case of *Pennington* v. *Redman Van & Storage Co. et al.*, 34 Utah 223, 97 P. 115, the action was to recover in trover the value of certain household goods. Plaintiff had stored certain household goods with defendant storage company, and he left the state and was absent for about three years. Certain of the goods were not paid for. The defendant Harris learned of the goods being stored and demanded possession from the defendant storage company. Some two or three years' storage charges had accrued. These Harris paid and obtained possession, not only of the goods which were not fully paid for, but other goods packed in cases and boxes not at the time known to be packed with the other goods which Harris claimed. Harris, however, failed to return the goods upon which he had no claim, and

sold and converted some of them. Tender was made by the plaintiff to Harris of the unpaid balance of the purchase price with interest. The payment was accepted and the excess reported back to the plaintiff.

The trial court admitted evidence as to the cost price of certain articles. The witness, in addition to testifying as to cost, stated when, where, and by whom the goods were purchased, the time and character of use, the condition they were in when stored, and the value as compared with the value of new articles of the same kind. In discussing the question, this court in substance held that the market price or value is the true basis from which the value of an article is to be ascertained in a court of justice, and added:

"It is not the only basis from which the actual value of articles may be ascertained in case such articles are not on the market and therefore may not have a market price or value."

And further indicated:

"Much no doubt depends upon the kind and character of the articles in question, and in connection with those all the surrounding conditions and circumstances should be considered in determining what evidence of value should be admitted. While in this case it was, perhaps, not affirmatively shown, before the trial court admitted the evidence of cost price, that the articles did not fall within the general rule, it does appear from the record that the articles in question were not generally on sale in the market, and threfore had no market price."

The application of the rule announced in the *Smith Case,* supra, was again before this court in the case of *Gleason* v. *San Pedro, L. A. & S. L. R. Co.,* 49 Utah 405, 164 P. 484, 486. This case involved the value of a shed that had been destroyed by fire. This question was asked: "Now are you prepared to state what it would cost to replace that shed?" Counsel objected. The court overruled the objection. Exception was taken, and the witness answered, giving a value. The manner of construction, the type of building, and the materials of which it was constructed were before the court. In discussing the ruling of the trial court this court observed:

"We have been quite liberal in allowing evidence of value where, as here, property has been destroyed which had no market value at the time of its destruction. In such cases evidence of the actual value of the property destroyed is always permissible, and the actual value may be ascertained as pointed out in *Smith* v. *Mine & S. S. Co.*, 32 Utah 21, 88 P. 683. The plaintiff was either unwilling or unable to shed any light upon the cost of constructing the shed. Of course the original cost of construction, standing alone, would not be proper evidence of its present value, and, if offered for that purpose, would be incompetent. *Chicago, etc., Ry. Co.* v. *Davis*, 78 Ill. App. 58. Yet, as a means of arriving at the actual value, if properly guarded by the court as pointed out in *Smith* v. *Mine & S. S. Co.*, supra, such evidence is admissible. But neither this nor any other court, so far as we know, has ever gone to the length of permitting a plaintiff to prove the value of property by merely showing what he assumed it to be worth or what it was worth to him. To admit such evidence constitutes error. *Central Branch U. P. Ry. Co.* v. *Hotham*, 22 Kan. 41; *Railway Co.* v. *Jones*, 59 Ark. 105, 26 S. W. 595. The district court, therefore, erred in permitting the witness to answer the question. * * *

"The court, therefore, erred in permitting plaintiff to answer the question and of which error the appellant has a clear right to complain. The only question that is doubtful is whether, in view of the other evidence relating to the value of the shed, the error is of that character which requires a reversal of the judgment on that ground alone. In view of the whole evidence we should hesitate to reverse the judgment upon that error alone, but for the reason that the judgment must be reversed on other grounds, we deem it only fair and just to the trial court to admonish it not to repeat the error on a retrial of the cause."

The rules laid down in the case of *Smith* v. *Mine & Smelter Supply Co.*, supra, was again discussed and applied in the case of *Norman* v. *Utah Hotel Co.*, 60 Utah 52, 206 P. 556.

In the instant case, after plaintiff and defendant had rested and defendant's motion for a directed verdict had been denied, defendant then produced evidence as to the market value of the property in question, and, for the purpose of supporting a judgment, it is immaterial from which side the evidence comes; if there is sufficient competent evidence to support the judgment as re-

vealed by the whole record, the judgment will not be disturbed on the ground of insufficiency of the evidence.

It appears from the record that the property was still in possession of the defendant, was in substantially the same condition as when taken by the defendant, and was available for examination. Defendant produced several witnesses who qualified to testify as to the market value of the articles. It was therefore incumbent upon the parties to produce such evidence, the goods having a market value, as would enable the jury from the evidence to determine the market value of the goods in question. Evidence of a market value was furnished by the defendant. The evidence of both plaintiff and defendant does not support the verdict or judgment for the amount found.

As heretofore indicated, the motion for a directed verdict came after the defendant had offered evidence, and therefore the correctness of the ruling of the court must be gauged by the state of the evidence at that time and not as of the time when the plaintiff had rested his case as at that time no motion was interposed.

In the instant case the only evidence offered by plaintiff as to value, was plaintiff's own testimony and that of Mr. Daynes. The latter testified as to the purchase of the piano and the radio.

Plaintiff's testimony consisted solely of values set out upon a list purporting to be a list of articles and pieces furnished in the nature of an inventory by the dealers from whom the goods were purchased. Plaintiff apparently took the position that cost price was sufficient. The plaintiff made no attempt to supply any information as to the condition of the furniture, or any other facts that might establish value except the cost prices.

Mr. Daynes testified that the purchase price of the piano in 1928 was $865; that the purchase was upon an installment contract. It was developed upon cross-examination

that at the time of purchase a second-hand piano had been taken in and a credit allowed of $215 or $265, and that "a grand piano does not depreciate very much."

As to the radio, Mr. Daynes testified he sold the radio to Mr. Haycraft about a year before, but did not give the sale price. He was then asked: "With good care, what depreciation would there be in that radio now?" Objection was made and overruled. The answer made to the question was: "We are selling sets like that, today, that were sold a year ago, that we had taken back, we are selling them for $55." No evidence was offered as to the condition, use, or otherwise.

A verdict for some amount finds support in the evidence as finally submitted, but not such an amount as the jury found. The testimony produced by the defendant showed the value of the property taken to be from $280.50 to $311. No competent evidence of a greater value was submitted. A $750 judgment cannot be thus supported, even on all the evidence on the first cause of action.

Plaintiff claims damages upon his second cause of action because of trespass to the real property. The allegations relating thereto are in substance: "That * * * defendant * * * committed trespass upon plaintiff's premises * * * by breaking and entering * * * without any rightful permission or authority, * * * and deprived plaintiff of his keys to his said home * * * and plaintiff was * * * ousted from possession thereof to his actual damage," in a sum specified, and a further sum specified "punitive damages."

It is not necessary to discuss either the law or the evidence as to the matter of punitive damages. There are neither allegations nor proof to support a verdict or judgment for exemplary or punitive damages. Defendant had been given authority by the wife, and had been furnished the keys, to enter, and directed to rent the property. He had in good faith purchased the furniture and believed he

had a right to enter and sell or remove it. No malice or ill will nor any wanton or vexatious acts are shown.

"Exemplary, punitive, or vindictive damages are such damages as are in excess of the actual loss, and are allowed where a tort is aggravated by evil motive, actual malice, deliberate violence, oppression or fraud." *Murphy* v. *Booth,* 36 Utah 285, 103 P. 768, 770. *Tripp* v. *Bagley,* 75 Utah 42, 282 P. 1026. There being neither pleading nor proof to justify the allowance of exemplary damages, the trial court erred in submitting that question to the jury.

The record fails to disclose any proof of actual damage resulting from the alleged trespass. The defendant was not guilty of trespass because of the original entry. He had authority from Mrs. Haycraft, who had the right to deliver her keys to the defendant and direct him to enter. At what point the defendant became a trespasser, if at all, we need not now decide. There was no evidence of a breaking or ouster, or that the entry was without right, and no pleading that after entry, which was lawful, defendant was ordered to leave or that he refused to do so. The case must be reversed and remanded for a new trial upon the grounds already stated.

Numerous errors are assigned. It would serve no good purpose to discuss any other of them specifically or further. Considerable space was devoted in the briefs of both parties to the question as to what authority the wife or husband may have in the matter of the disposition *of* household furniture. If the question be conceded that the property is solely the property of the husband, the authority of the wife must then depend upon the circumstances, conditions, and relations out of which an express or an implied authority may be shown. In the retrial of the case the evidence may be very different from that produced in the trial from which this appeal resulted. It would therefore serve no good purpose to further discuss the errors assigned or presented to the court.

For the reasons herein stated, the judgment must be reversed and the case remanded for a new trial. Such is the order. Appellant to recover costs.

STRAUP, C. J., and FOLLAND and EPHRAIM HANSON, JJ., concur.

ELIAS HANSEN, Justice.

I concur in the order reversing the judgment in this cause. With respect to the furniture, the jury rendered a verdict for a greater amount than the evidence justified. The highest value placed upon the furniture was $311. Apparently that value was based upon the price that dealers in secondhand furniture would be willing to pay for the furniture. It also appears from the evidence that those who deal in secondhand furniture usually make a profit of 15 per cent for handling furniture. It should be observed that the measure of plaintiff's damage, if any, should be determined by what he would be required to pay to replace his furniture rather than what secondhand dealers in furniture were willing to pay for such furniture.

I concur in the views expressed in the prevailing opinion that neither the pleadings nor the evidence support the verdict for punitive damages. And likewise I concur in the view that there is a failure of proof that plaintiff's real estate was damaged by the acts complained of. Under the evidence, the most plaintiff was entitled to recover on his second cause of action were nominal damages, based upon the fact, if it be a fact, that defendant refused to leave the premises after directed so to do by the plaintiff. In view of the fact that a retrial of this cause is necessary, there are, in my opinion, questions of law raised by the present appeal not discussed in the prevailing opinion which should be determined upon the present appeal as directed by Comp. Laws Utah 1917, § 6995.

Defendant earnestly contends that under the evidence he was entitled to a directed verdict and to have his other re-

quested instructions given. The trial court refused to direct a verdict, and also refused to give one of defendant's requested instructions, which was to the effect that the fact that Mrs. Haycraft was the wife of the plaintiff and in charge of the home during the six or eight weeks that her husband was absent gave her the right to sell and dispose of the furniture in question. The cases cited and relied upon by defendant do not support that doctrine. The instructions given on that phase of the case were as favorable to the defendant as he was entitled to have given. Plaintiff makes no claim that the instructions given were too favorable to the defendant. We are therefore not called upon to consider the instructions from the viewpoint of the plaintiff. The court below properly refused to direct a verdict for the defendant, and likewise properly refused to instruct the jury that Mrs. Haycraft had a right to sell the furniture by reason of being the wife of the plaintiff and in control and possession of the home and the furniture. The court instructed the jury that:

"You are instructed that without the order of the court neither the husband or wife can remove the other from their homestead without the consent of the other, so if you find from a preponderance of the evidence that the plaintiff's wife, without his consent, delivered possession of the premises in question to defendant, and that the defendant learned that the wife of plaintiff had not obtained permission or consent from the plaintiff to deliver possession of said premises to the defendant, and that the defendant was requested by plaintiff to leave said premises but persisted in remaining there, then the defendant may be held liable for damages in trespass."

Defendant objected to the giving of the foregoing instruction, and assigns the giving thereof as error. In my opinion, that instruction is open to the objection urged against it by defendant and the giving thereof was calculated to confuse the jury. There is no evidence that the defendant at any time intended to remove plaintiff from his home. So far as appears, the sole purpose of the defendant in entering upon the premises was to remove the furniture. If plain-

tiff's wife had a right to dispose of the furniture either because it was her own or because of authority from her husband, it would follow, that she had a right to permit the defendant to remove it from the home. Under such circumstances, the defendant, having paid for the furniture, would have a right to remove the same. A licensee is entitled to a reasonable time to remove movable property. 37 C. J. 299. While a wife, as such, has no implied authority to sell her husband's furniture, she does have implied authority to permit people other than her husband to enter a home which is in the possession of herself and her husband.