## LYM v. THOMPSON.

No. 7047.   Decided September 17, 1947.   (184 P. 2d 667.)

See 67 C. J. War, Sec. 60. Inference on inference; presumption on presumption, see note, 95 A. L. R. 162. See, also, 20 Am. Jur. 168.

*Benjamin Spence,* of Salt Lake City, for appellant.

*Pugsley, Hayes & Rampton,* of Salt Lake City, for respondent.

PRATT, Justice.

This action is founded upon the alleged conversion of 119 steel 4″ tubes for which the lower court awarded plaintiff a judgment of $1412.64 with costs. The defendant has ap-

pealed and raised two important issues: (1) Did plaintiff prove the (a) ownership of and (b) the number of the tubes taken by circumstantial evidence? (2) Is the O. P. A. price of tubes the measure of the value of the tubes?

(1) (a) In disposing of the issues of ownership and identity we shall consider all the evidence regardless from which side it was produced in view of the fact that the issues do not raise the question merely of the sufficiency of the evidence of one side only.

Late in the month of March or early in April, 1946, two employees of the defendant E. Harold Thompson were sent to the yard of the Salt Lake Transfer Company to cut tubes from boilers stored there by defendant. While there they discovered a pile of steel tubes, 9 gauge 4″ in diameter and 17 feet long. The witness Wood testifying upon behalf of the plaintiff testified that an employee of the Transfer Company informed them that the pile belonged to Mr. Lym (the plaintiff) (purely hearsay as to ownership). The pile was located in the yard about where plaintiff testified the 144 tubes had been placed. It was the only pile of its kind there. This discovery was reported to Mr. Thompson, the defendant. At that time he needed an undetermined number of 4″ tubes in a water pipe line on property in which he was interested at Sunset Beach, on Great Salt Lake. He instructed one of his men—Mr. Griffith, a foreman—to go to the Transfer Company Yard and get some 4″ tubes and weld them in the pipeline. This was done by the foreman and one Wood—both called as witnesses at the trial. The pipes were taken from a pile of such tubes located approximately as located by Mr. Lym.

Do these facts sufficiently identify the tubes taken as those of Mr. Lym? Ownership is proven by Mr. Lym. Identity of piles is given by testimony of location; of their being only one such pile; and that pipes were taken from that pile. The question must be answered in the affirmative.

(1) (b) The serious problem in this case is as to proof of the taking of 119 tubes. Mr. Wood, a former employee of the defendant, who was called as a witness for the plain-

tiff asserted that he and Mr. Griffith, defendant's foreman, hauled 63 steel tubes out of the pile; that these 63 tubes were the best and most serviceable ones; that the 63 tubes did not complete the job of replacing defendant's water pipeline; that after the last of the 63 tubes was removed the pile of tubes was still large and contained more than 25 tubes. Mr. Griffith, called as a witness for the defendant, denied taking more than 38 tubes; denied that the whole water line was replaced, but did testify that the whole pipe line was approximately 1500 feet long; that the work on it was not complete when Wood ceased to be an employee of defendant; that he finished the line using 4″ tubes which he got from the Acme Boiler's place of business; that the pile of tubes at the time of the trial looked like it was about the same amount as when he took the last of the 38 tubes defendant admits taking. Mr. Lym, the plaintiff, testified that the pile of tubes originally contained 144 lengths of tube. Thirty-four of those tubes were new, 85 of them were used only a short time and were the equivalent of new tubes and 25 tubes had been used somewhat longer and were not so serviceable; that at the time of the trial there were only 25 tubes in the pile and those were all of the older and more used type. That he checked the pile in the early part of June, 1946.

The trial court on this evidence found that the defendant appropriated all the tubes—the 119—that were missing from the plaintiff's pile. Defendant's objection is that the evidence in this case is not sufficient to support the finding as to the difference between 63 and 119 tubes—a purely circumstantial evidence question. He apparently concedes that the plaintiff's evidence justifies a finding that he appropriated 63 tubes. By his pleadings he claims that if they were Mr. Lym's tubes they were taken by inadvertance.

The well reasoned case of *New York Life Ins. Co.* v. *McNeely,* 52 Ariz. 181, 79 P. 2d 948, sets down the rule governing the use of circumstantial evidence in civil cases which we deem sound and will apply to the evidence here. 52 Ariz. 181, 79 P. 2d at page 954.

"In civil cases, involving only property rights * * * it is sufficient, if the ultimate fact is to be determined by an inference from facts which are established by direct evidence, that it be more probable than any other inference which could be drawn from the facts thus proven."

See also Wigmore on Evidence, 3rd Edition, Vol. 1, Sections 25, 41, 42 and 43; and 97 Am. St. Rep. page 802.

The defendant proved that the yard wherein the tubes were stored could be entered and the tubes taken by persons other than the defendant. Holes large enough to permit a man to enter had been cut in the fence around the yard several times. The key to the lock on the yard gate could be obtained from the office of the Salt Lake Transfer Co. by a person identifying himself as one of the 5 to 10 parties who had material stored in the yard, and were therefore permitted to enter the yard upon application.

The question which we must resolve is one of inferences to be drawn from proven facts. Who took the 56 tubes not accounted for by the direct evidence? Was it defendant or was it a third party? If the probabilities are equal then the lower court's decision must be reversed.

The tubes were worth, at a maximum, less than $12 each. They weighed over a hundred pounds a piece. If they were carried out through the hole in the fence they had to be taken one at a time—not so if taken in a truck. The probabilities seem to point to the use of some vehicle to carry them away. If carried away one at a time it was probably at night in an effort to steal them. But it is strange that the pile when the thieves got through should have looked as described by Mr. Griffith, the same as when he got through with it, unless it is concluded that the thieves took the 56 pipes before Wood and Griffith got on the job. But here again we are met with the testimony of Wood and of Griffith. Of course, if Mr. Griffith's testimony is taken as true —that is, that 38 tubes were taken leaving the pile in appearance as it was at the time of the trial—then some third party could well have taken the other pipe before Wood and

Griffith got to work on the pile. But the court seemed to believe plaintiff's side of the case, and that would include the testimony of Wood to the effect that pipe was taken after they had taken 63 tubes, as, when he quit, the pile was very much larger than a pile of 25 tubes. In point of time then the tubes were disappearing at practically the same time that the evidence shows directly that some pipe was appropriated by defendant's agents. Add this to the fact that defendant was in need of more pipe than was proved directly to have been taken and the result is sufficient to cast the weight of the probabilities in favor of the lower court's decision. It is true, of course, that Griffith sought to account for the extra tubes necessary for the completion of the pipe line by saying that he got them from those at the Boiler Company's place of business. But, the lower court has seen fit to reject defendant's version of the case and the question for us to decide is not which of the two sides should be believed. We are called upon to decide whether or not there is evidence in the case that will directly or by inference support the decision of the trier of the facts. In deciding that question we decide merely—so far as circumstantial evidence is concerned—that if there are inferences to be drawn therefrom that will support the lower court's conclusions upon the probabilities of that evidence, we are bound to uphold the decision, even though had we been trying the case we might have stressed the inferences adversely to such a conclusion. We have shown above how there are inferences that will support the lower court's conclusion and therefore we must affirm it. It is so ordered.

(2) Is the O. P. A. price of tubes the measure of the value of the tubes? In fixing the value of the tubes the lower court took the plaintiff's testimony of the cost of the tubes and assessed the damages on that basis. ∎ The defendant here contends that the most the plaintiff can be allowed is the O. P. A. ceiling price of used tubes. We believe the lower court's actions to be proper.

The O. P. A. ceiling prices were not promulgated to govern the amount of a recovery for loss of personal property

by a wrongful conversion. Such recoveries are so sporadic that they do not constitute a factor in the battle against inflation. *Zemel* v. *Commercial Warehouses,* 132 N. J. L. 341, 40 A. 2d 642; *Bowles* v. *Brannagan,* D. C., 60 F. Supp. 897; *Ross Produce Co.* v. *Thompson,* 236 Iowa 863, 20 N. W. 2d 57; *Tierney* v. *General Exchange Ins. Corp.,* D. C., 60 F. Supp. 331. So even if there was comprehensive testimony as to the O. P. A. ceiling price we do not believe it would be the measure of the value of the tubes. (The evidence on ceiling prices was as to pipe of a different gauge, and 9 gauge was estimated from that.)

As a general rule the measure of the value of an item of converted personal property which has a market is the market value at the time and place of conversion. The evidence here shows that used 4 inch pipe or tubes sell at about $.25 per foot, new 4 inch pipe of the quality plaintiff owned sells for $.73 per foot. Plaintiff's evidence shows the pipe converted to be part new and part the equivalent of new pipe. The maximum recovery justifiable for the pipe the equivalent of new pipe could, of course, be the market price of new pipe—$.73 per foot. However, though some of the pipe was the equivalent of new pipe it was not new pipe, and what the actual market price of such pipe is would be difficult to determine and would depend in each case on the condition of the individual lot of pipe. Since the plaintiff's pipe is now not possible of identification an appraisal is impossible.

There was testimony that the market for this pipe had not changed to any material degree since plaintiff purchased the tubes; that the plaintiff purchased the tubes for use in rebuilding and repairing boilers; that he had taken certain preliminary steps in processing the tubes for replacement in boilers; and that the used tubes which were converted were the equivalent of new tubes. The acceptance by the court of the cost of the tubes to the plaintiff may have been a recognition of the fact that such cost closely approximated the present market price of such pipe; or he may have merely accepted that

cost price as the most equitable, and reliable way of fixing the amount of the damages the plaintiff suffered. In either case his actions were proper. See Annotation, 62 Am. St. Rep. 791.

The judgment of the lower court is affirmed. Costs to the plaintiff and respondent.

McDONOUGH, C. J., and WADE, WOLFE, and LATIMER, JJ., concur.