364 P.2d 418

Peter M. LOWE, Special Administrator of the Estate of T. O. Nelson, deceased, Plaintiff and Appellant,

v.

Max ROSENLOF and Max Rosenlof Construction Company, a partnership, Defendants and Respondents.

No. 9348.

Supreme Court of Utah.

Aug. 29, 1961.

Peter M. Lowe, Salt Lake City, for appellant.

Clyde & Mecham, Salt Lake City, for respondents.

McDONOUGH, Justice.

Appeal by the Special Administrator of the Estate of T. O. Nelson from a judgment of the district court, the details of which we set out below. Hereinafter where plaintiff is referred to the reference is to T. O. Nelson.

On March 3, 1958, the defendants as holders of the prime contract for the construc-

tion of a new high school building in Lehi, Utah, awarded plaintiff the subcontract for doing the concrete work on the project. Due to the plaintiff's lack of funds, and in order to get the job under way, the defendants also cosigned with the plaintiff on a note to secure a $1,000 loan. Work commenced under the contract about the middle of March, 1958, and plaintiff continued forming and placing the concrete pursuant thereto until the evening of September 9, at which time some 73% of the concrete for the building had been poured. On the morning of September 10, the defendant Max Rosenlof "took over" the concrete work and subsequently completed it, using plaintiff's men, tools, materials, and prefabricated forms.

The action below was brought to recover damages for an alleged breach of the written subcontract and for conversion of the plaintiff's property. Plaintiff alleged in his complaint that the defendants had excluded him from the job without legal excuse and had converted the tools, materials and prefabricated concrete forms which he then had on the job. The defendants counterclaimed, contending that plaintiff had breached the contract by abandoning the work.

The trial court found that the plaintiff had abandoned the work and awarded damages to the defendants. The court also found that the defendants had converted 60% of the plaintiff's prefabricated forms by using them on another job, and that the value of the converted forms was $4,000 at the time of their conversion. From a denial of plaintiff's motions for a new trial, or to reopen for the purpose of presenting further evidence respecting the value of the converted forms, plaintiff appeals. Three grounds are claimed by the plaintiff for reversal: (1) the preponderance of the evidence does not support the finding of the court that plaintiff had abandoned the contract, but shows rather that he was forced off the job by the defendants. (2) The court erred in failing to give force and effect to the written contract between the parties. (3) The evidence was insufficient to support the court's finding with respect to the value of the converted forms.

This court has stated on numerous occasions that findings of fact made by the trial court will not be disturbed so long as they are supported by substantial evidence. Therefore, the findings of the lower court must be affirmed unless there was no reasonable basis in the evidence on which the court could fairly and rationally have thought the requisite proof was met.[1]

In support of his claim that he was "without legal excuse excluded" from the work plaintiff argues that the defendants knew of his lack of capital from the beginning, as

---

1. Child v. Child, 8 Utah 2d 261, 332 P.2d 981.

evidenced by the fact that they cosigned with him on the note to secure the $1,000 loan with which to get the job started. That notwithstanding this knowledge, the defendants failed to pay plaintiff promptly for his proportion of the estimates as they were submitted to the Alpine School District for payment. Briefly stated, it is plaintiff's contention that he was compelled to leave the job because of the defendants' failure to comply with their agreement to pay promptly.

Plaintiff's contention that he was "forced off" the job is without merit. Not only was plaintiff paid in full for all estimates which he submitted prior to the time when the defendants took over the job, but by the first of August plaintiff had already been paid within a few hundred dollars of the amount to which he did not become legally entitled until the first of September. Moreover, although the written contract only imposed on the defendants the obligation to pay plaintiff once each month at the rate of $9.45 per yard for 90% of the concrete which had been poured, plaintiff was paid 100% of his estimates twice monthly at the rate of $10 per yard. In addition, defendants paid $500 on the note which they had cosigned to help the plaintiff get started.

The evidence not only fails to support plaintiff's contention that he was forced off the job by the defendants' failure to pay promptly, but it supports the court's find-ing of abandonment as well. Plaintiff was in financial distress when he was awarded the contract in March, and this distress became more severe as the work progressed. By September 9, the last day which the plaintiff worked, he had unpaid bills for equipment rentals and materials going back to March and April. The payroll checks issued to cover the work period from August 1 to August 15 had not cleared when presented for payment, and some of the men had not been paid for work performed prior to the first of August.

That plaintiff was in such financial distress as to be no longer able to finance the work is shown by the testimony of Kelsey Chatfield, who was inspector for the architect on the project. Chatfield testified that on four or five occasions within a month to six weeks before leaving the job, plaintiff had told him that he was in such financial distress that he could no longer finance the work and that "he would have to quit." That plaintiff abandoned the contract is also supported by the evidence relating to a telephone call from the defendant Max Rosenlof to the plaintiff. Rosenlof testified that on the evening of September 9 he placed a call to the plaintiff at his home in Bountiful. His account of what occurred is as follows:

"When I got him on the telephone I said, 'Ted, there's got to be something done on that job. I haven't seen you on that job for approximately two

**194**

weeks. The men are running wild and getting in trouble because they have not been getting their pay checks.' * * * I asked him about getting down on the job because the job was running wild and he said, 'Max, you are just going to have to take the job over; I am broke; I have got a lot of people pressuring me for money and I can no longer finance the job and I am about going crazy. I am going to lose my house; I am going to lose my trucks, the forms and the equipment.' He says, 'I have been home trying to sell my house so that I can get some operating capital to keep on operating with.'"

Although plaintiff admits that he received a call from Rosenlof, he claims that Rosenlof merely inquired about his absence from the job and that he had advised Rosenlof that he was trying to sell his home to get capital to operate on, and that he would be back on the job within a couple of days.

■ We think the court was justified in accepting Rosenlof's account of what was said. Both parties agreed that the phone call was made on the evening of September 9, and that Rosenlof took over the job on the following morning, September 10. In view of the plaintiff's testimony that the call had ended with the understanding that he would be back on the job in a couple of days, it is significant that when plaintiff was told by his foreman that Rosenlof had

taken over the job, he did not contact Rosenlof to find out what the reason was. Instead, he had his wife go to Rosenlof several days later to try to get some money to cover the payroll checks which were "bouncing." The court's finding with respect to abandonment was, therefore, supported by substantial evidence and must be affirmed.

■ In view of the fact that it was plaintiff who abandoned the contract, his contention that the court erred in failing to give force and effect to the written contract between the parties must likewise fail. The applicable rule is well stated in Miller v. Young, 197 Okl. 503, 172 P.2d 994, 995, as follows:

"It is an elementary principle of the law of contracts that in order to recover upon a contract, the contractor * * * must first establish his own performance or a valid excuse for his failure to perform (citing authorities including Am.Jur.). Since plaintiff failed under the uncontradicted proof to complete the work he contracted to do, without valid excuse for such failure, he was entitled to no judgment against defendant."

■ Although plaintiff is not entitled to the benefits of the contract, he is, nevertheless, entitled to payment on a quantum meruit basis for the work which he did per-

form.[2] The lower court awarded plaintiff the contract price on the full amount of the concrete work done on the entire job, including that done by the defendants and charged plaintiff with the defendants' excess cost above the agreed contract price. While on the surface this might appear to be more favorable to the plaintiff than the law allows, we think it reaches substantially the same result as would a proper quantum meruit approach in view of the fact that a major portion of the work remaining to be done when the defendants took over the job was low cost, high profit "flat work." In any event, only the defendants could properly have raised this issue under the facts of this case and they are not complaining.

In support of his claim that the court erred in finding the value of the converted forms to have been only $4,000, plaintiff contends that (a) the evidence was insufficient to support such a finding because such a finding could only have been justified on the basis of a wholly unsupported statement by the defendant Max Rosenlof; (b) a much higher value should have been found inasmuch as there was sufficient evidence submitted from which a higher "market value could be deduced"; and (c) if the evidence in the record was in fact insufficient for the purpose of establishing market value, the court should have granted plaintiff's motion to reopen so that additional evidence could have been introduced upon which a finding of a higher market value could properly have been made.

We are not persuaded by these arguments. This court has stated that the measure of damages for conversion is the market value of the item converted at or near the time of the conversion,[3] and furthermore, that proof of the value of converted property is essential to recovery of damages on the theory of conversion.[4]

While plaintiff introduced evidence showing that the original cost of the forms could have been as high as $17,707.49, and that their replacement cost new at the time of the conversion would have been $20,071.85, such evidence was not by itself sufficient to show what the market value of the forms was at the time of their conversion. Although plaintiff did produce evidence that the forms could be used for as many as 1,000 pours if properly taken care of, he failed to submit any evidence whatsoever as to the condition of the forms or as to how they had been maintained. He failed to produce such evidence despite the fact that he had notice of where the forms were kept for at least a month before trial commenced. Apparently he made no effort to

2. Ryan v. Curlew Irr. & Reservoir Co., 36 Utah 382, 104 P. 218; Eckes v. Luce, 70 Okl. 67, 173 P. 219; 17 C.J.S. Contracts § 511.

3. Lym v. Thompson, 112 Utah 24, 184 P. 2d 667.
4. Knighton v. Manning, 84 Utah 1, 33 P. 2d 401.

look at the forms or have them appraised. In view of plaintiff's failure to show what the market value of the forms was, we believe the trial court was justified in refusing to "deduce" a higher market value from plaintiff's evidence respecting their cost price. This court held in the case of Haycraft v. Adams [5] that evidence of cost price is insufficient for the purpose of establishing market value under these circumstances.

Plaintiff cites the case of Lym v. Thompson, supra, to show that evidence of cost price is proper for showing market price when the cost price closely approximates market price. A reading of that case, however, shows that part of the converted pipe there involved was "equivalent of new" and furthermore, an appraisal of the pipe's value was impossible because it was "not possible of identification." [112 Utah 24, 184 P.2d 670.] In the instant case an appraisal could easily have been made. Moreover, the evidence showed clearly that the forms were not new since many of them had been used "approximately" 300 or 400 times. In the absence of other competent evidence upon which to find market value, we think the court was entirely justified in placing their value at $4,000 on the basis of Max Rosenlof's testimony. He stated that he would not appraise "all" of the forms to be worth more than $4,000 at the completion of the high school job in Lehi.

Insofar as the denial of plaintiff's motion to reopen is concerned, we are not persuaded that the court abused its discretion in view of the fact that the motion was first made some three months after the trial was concluded. Despite the fact that plaintiff had ample notice that "market value" was the only proper measure of damages for conversion, he nevertheless failed to submit competent evidence to show what the market value of the forms was. Instead, he insisted that market value be deduced from the cost price. Accordingly this claim must also fail.

Judgment affirmed. Costs to respondents.

WADE, C. J., and HENRIOD, CALLISTER and CROCKETT, JJ., concur.

---

5. 82 Utah 347, 24 P.2d 1110.