482 P.2d 115

**William R. McCURTAIN, Plaintiff and Respondent,**

v.

**INTERSTATE CONSTRUCTION COMPANY, a corporation, Defendant and Appellant.**
**No. 12083.**

Supreme Court of Utah.
March 3, 1971.

Crockett, J., concurred in result.
Ellett, J., did not participate.

Walter R. Ellett, of Dansie, Ellett & Hammill, Murray, for defendant-appellant.

Merlin O. Baker, of Ray, Quinney & Nebeker, Salt Lake City, for plaintiff-respondent.

HENRIOD, Justice.

Appeal from a judgment for plaintiff in a nonjury case bottomed on conversion. Affirmed with costs to plaintiff.

An examination of the record will reveal that the trial court's conclusion was supported by evidence favorable to plaintiff's claim for damages, abstracted below:

In December 1967, M bought, sight unseen, from one Mrs. L, a used caterpillar tractor situate in the rugged Uinta Mountains of Northeast Utah, for $800. He went to see the machine in late spring of 1968, when a cursory inspection showed that one of the tracks was off at the side of the machine and that the seats were worn out. Later on M took a mechanic to examine the tractor, who found nothing wrong with it except for normal wear. Later, he took a foreman of a construction company having removal equipment, about 20 miles away, to the site of the machine and found that it had been driven and that its engine still was warm. Down the road a piece he found Mr. Smith, defendant's foreman and part owner, who, without any documents of title, claimed ownership of the machine by virtue of a deal his company had with a heavy equipment Wheeler dealer company, that purportedly had authority to sell it on behalf of Mrs. L, the owner, which authority admittedly it did not have, a $300 check given by defendant having been returned when the Wheeler people learned of the sale by Mrs. L of the tractor to M,—and which fact was relayed to defendant's president. At that meeting in the mountains, M told Smith he had a bill of sale to the tractor and told him not to move the equipment till he had consulted his lawyer, after which he would be back, to which Smith agreed. After waiting four or five days, Smith, without attempting to contact M, removed the machine to American Fork, a town near Salt Lake City. M returned to the mountains, found his caterpillar had butterflied and his lawyer wrote a demand letter to another Mr. Smith, president of defendant, who disclaimed receipt thereof.

Prior to all this, M had sold the tractor, through one Morrison to one Breitling for $4500, deliverable in Salt Lake "as is," as M put it, and in reasonably good, operable condition, as Breitling put it, who said

also that he had had considerable dealings with M and "wasn't afraid of getting stuck." Morrison, the salesman, who had been in the heavy equipment business and had dealt with M for many years, said the latter never had misrepresented anything to him, that he had sold this type tractor before,—one about six months before, in fact, for $5500,—which type in average running condition would bring $5000 in the market. He added that he had seen this tractor working before; that considering mileage, time and expense of using another tractor in hauling, the cost of transporting to Salt Lake could be $500. Furthermore, he had contacted one Hall, an experienced heavy equipment man referred to him by M for appraisal and whom Morrison knew very well, who told him that with a little work to fix it up, the tractor was basically a good buy.

The evidence further indicated by the testimony of defendant's own foreman, Smith, that it took but 13 hours to dislodge the tractor from its site in the mountains, repair it, and start it operating by means of towing. The other Smith, defendant's president, although having said he had received no demand letter from anyone, nonetheless admitted in his testimony that he recalled a phone call from Rock Springs, Wyoming, with respect to ownership of the property, after he had received the $300 check back from Wheeler on learning that the tractor already had been sold to M,

after which he turned the matter over to his attorney. At that juncture very little had been done to the machine, which was in pretty much the same condition as it was in the Uintas. After such knowledge and alert, the defendant deliberately repaired the machine to the tune of some $1800–$2000. There were some parts used in repair, taken from a junked machine in the defendant's yard, where the tractor, at time of suit still remained in running condition.

Defendant says that 1) the $2800 judgment is not supported by the evidence, and 2) the court erred in not awarding transportation and repair costs to defendant. We respectfully disagree with its urgence, and in doing so feel that defendant quite naturally has chosen evidence in support of its contention that it is more favorable to its position, which is not in harmony with the established rule to the contrary. It asks us, for example, to accept the testimony of one Carlson, a recognized dealer in dismantling junked heavy equipment into parts for resale, that repair of the tractor would cost $3500, while at the same time, the defendant itself discounted such testimony by its own conceded figure of about half that amount for its *accomplished* repair,—to which certainly it must be bound.

Defendant argues that because this same Carlson, representing Wheelers, said the tractor was worth but $300 in the moun-

tains, where originally defendant concededly converted it, we must take that figure at its market value, and that in applying the well-established rule that the damage in a conversion suit is the value at the time of the conversion,[1] with title going to the converter, the plaintiff here is entitled to a maximum $300 recovery. Under the facts outlined above, the non sequitur clearly is apparent. The same Mr. Carlson testified that a functional tractor of this type would have a market value of between $4500 and $6500. The trial court made a finding of fact that "the market value of the * * * Tractor at the *time of the taking* was $2,800.00,"—and it would seem that such a finding, under the favored evidence here, was well within the market value that the court actually could have found. Under the judgment the defendant obtains a piece of equipment,—de son tort, mind you,—for a figure within the range of market value attested to by its own witness, and is in no position to take advantage of its own conversion.[2]

CALLISTER, C. J., and TUCKETT, J., concur.

CROCKETT, J., concurs in the result.

ELLETT, J., does not participate herein.

1. Lowe v. Rosenlof, 12 Utah 2d 190, 364 P.2d 418 (1961).

2. A. L. Williams & Sons v. Brown, 18 Utah 2d 224, 418 P.2d 981 (1966).